SHARON L. ANDERSON (SBN 94814)
County Counsel
JASON W. MAUCK (SBN 255133)
Deputy County Counsel
COUNTY OF CONTRA COSTA
651 Pine Street, Ninth Floor
Martinez, California 94553
Telephone:   (925) 335-1800
Facsimile:    (925) 335-1866
Electronic Mail: jason.mauck@cc.cccounty.us

Attorneys for Defendants
CONTRA COSTA COUNTY and TASHA MIZEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.R., a deceased minor by and through her successor in interest JOHN FREEMAN; JOHN FREEMAN, an individual; and CRISTINA RAMIREZ, an individual<br><br>Plaintiffs,<br><br>v.<br><br>CONTRA COSTA COUNTY, a public entity; TASHA MIZEL, an individual; MARCIE FRANICH, an individual; AND DOES 1 to 50, inclusive,<br><br>Defendants. | No. C19-07152 MMC<br><br>REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT<br><br>Date:  May 15, 2020<br>Time: 9:00 a.m.<br>Crtrm: B, 15th Floor<br>Judge: Hon. Maxine M. Chesney<br>Date Action Filed: October 30, 2019<br>Trial Date: None Assigned |

## I.    INTRODUCTION

Plaintiffs' moving papers lack the necessary legal and factual argument to rebut defendants' motion to dismiss.  As detailed below, plaintiffs only make passing arguments in response to defendants' contention that this Court lacks jurisdiction to hear a significant portion of the causes of action raised in the first amended complaint (ECF 19).  Equally, plaintiffs do not even address defendants' argument that the state law claims are untimely, or

1   that plaintiffs' contentions regarding placement with D.R.'s extended family is not a

2   constitutional violation.  Taken together as a whole, the plaintiffs have failed to adequately

3   allege any cause of action, and defendants' motion should be granted.

4   **II.      FACTS**

5          Plaintiffs offer no new or separate allegations from those presented by the defendants

6   in their motion to dismiss.  For purposes of this reply, the most pertinent facts are that: 1)

7   plaintiffs' California Government Claims Act ("CGCA") claims are both untimely (for

8   different reasons); 2) plaintiff Freeman was not the legal or alleged father of D.R. at the time

9   of removal; 3) the subject deputy bailiff did nothing more than administer a drug test at the

10  behest of the Court, and the test came back positive; and 4) there are no allegations that any

11  defendant was deliberately indifferent to the alleged danger to D.R. while in foster care with

12  Marcie Franich.

13  **III.     ARGUMENT IN REPLY**

14         **A.      Plaintiffs do not Address Defendants' Argument Concerning the California
                   Government Claims Act**

15         In their opposition, plaintiffs focus on the first six months between D.R.'s death and

16  when their CGCA claims were presented.  However, defendants' contention is two-fold: first,

17  plaintiff Freeman had six months to bring suit after his initial CGCA claim was rejected, but

18  he did not; and second, plaintiff Ramirez failed to file a timely claim.

19         Plaintiffs do not dispute they only had six months to file an action.  "The statutory

20  period of limitations for actions against a public entity are mandatory and must be strictly

21  complied with.  A failure to start the action within the statutory time period is a valid ground

22  for dismissal of the action."  *Cole v. L.A. Unified Sch. Dist.*, 177 Cal. App. 3d 1, 5 (1986)

23  (internal citations omitted).  Plaintiff Freeman's claim was rejected on April 16, 2019, and

24  plaintiffs did not file their action until October 29, 2019, more than six-months later;

25  therefore, it is untimely, and all state law causes of action are barred.

26         Plaintiff Freeman's argument that he did not have autopsy or dependency court records

27  carries no weight.  Plaintiff Freeman obviously had knowledge enough to file a claim and a

28  lawsuit without records, so any missing documents are immaterial to presenting his claims.

And plaintiffs cite no law allowing them to claim estoppel in filing their CGCA claim.

Defendants' second contention is that plaintiff Ramirez, D.R.'s mother, failed to file a timely claim.  And there is no explanation in plaintiffs' opposition or first amended complaint as to why plaintiff Ramirez only discovered her claim one year after D.R.'s death, when plaintiff Freeman was able to file a government tort claim within six months of the death.  As stated in the moving papers, the statute of limitations for wrongful death causes of action starts on the date of death.  *Kincaid v. Kincaid*, 197 Cal. App. 4th 75, 80 (2011).  Plaintiffs offer no legal explanation as to why they delayed in bringing their lawsuit or filing their claim.  The allegations in the complaint, coupled with the judicially noticeable claims, indicate that all state law claims should be dismissed.

### B.   The Pleadings Do Not Substantiate Plaintiffs' Argument that Freeman Had Standing to Assert His Claims

Plaintiff Freeman concedes in his opposition that the only way he knew that he was potentially the father of D.R. was because the maternal grandmother said D.R. looked like him.  ECF 30, 4:8 – 10.  He also concedes that he had to assert his parentage through the court, and that he had no parental rights at the time D.R. was taken from the hospital by social workers.  *Id*. at 4:12 – 14, *see also* fn. 2 (indicating that plaintiff Freeman did not have biological or presumed father status).  Plaintiff Freeman has offered no argument and presented no allegation that demonstrates that he had legal, parental rights over D.R. at the time of her removal from the hospital.  Further, he concedes that he did not think he was the father at D.R.'s birth.  As stated in defendants' moving papers, plaintiff Freeman was only an alleged father at the time of removal.  "An alleged father does not have a current interest in a child because his paternity has not yet been established.  Thus, for example, an alleged father is not entitled to appointed counsel or reunification services.  Due process for an alleged father requires only that he be given notice and an opportunity to appear and assert a position and attempt to change his paternity status."  *In re Christopher M*., 113 Cal. App. 4th 155, 159 60 (2003).  Plaintiff Freeman has not alleged that he had any legally recognizable parental rights, or even when he was granted any parental rights, and therefore, he has no standing to bring this action based on his parentage of D.R.

### C.   Plaintiffs Do Not Contest That This Court Cannot Review State Court Parentage Determinations

Plaintiffs miss the point of defendants' contention that the Domestic Relations Exception bars this Court from determining child custody.  Plaintiffs argue that they did not ask this Court to determine custody, and defendants' do not object to that characterization. Defendants argue in their motion to dismiss that this Court cannot second-guess the child custody and parentage laws of California as applied to plaintiff Freeman.  As stated in the complaint, plaintiff Freeman was not a legal parent of D.R. at the time of the seizure (ECF 19, pg. 21, fn. 5), and does not allege when his parental status changed.  This Court cannot review the state court custody determination based on the Domestic Relations Exception.

### D.   The *Rooker-Feldman* Doctrine Applies

Without legal discussion, the plaintiffs claim that they are entitled to raise claims for civil rights violations.  Plaintiffs cite to *Hardwick v. County of Orange*, 844 F.3d 1112 (2017), which concerns a fabrication of evidence claim.  However, defendants raised the *Rooker-Feldman* jurisdictional bar in relation to only two claims made by plaintiffs: the determination of parentage of D.R. and the placement of D.R. with family members.  *See* ECF 22, 9:19 - 28. Plaintiffs do not contest either argument and have effectively abandoned or waived their position through their silence.  *See Qureshi v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 21843, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims") (*citing Jenkins v. City of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)).  Even if the matter was not conceded, the plaintiffs have alleged that the state court issued orders regarding plaintiff Freeman's parentage, and this Court cannot intercede or second-guess those orders under the *Rooker-Feldman* doctrine.

### E.   There is no Constitutional Requirement to Place Foster Children with Alleged Family Members

Plaintiffs did not and cannot rebut defendants' argument that there is no constitutional claim for not placing a foster child with extended family and relatives.  Plaintiffs only cite to state and federal law regarding placement with *parents*, and defendants concede that there is a fundamental, constitutional right to children staying with their parents.  However, defendants'

1  contention was that there is no constitutional cause of action to have D.R. placed with

2  extended family members, which is a pillar of plaintiffs' allegations.  *See e.g.* ECF 22, ¶¶61 –

3  63, 66, 67, 146, 183.  As stated in the moving papers, and unrebutted in the opposition, there

4  is no constitutional right to have a removed child placed with extended family.

5          Plaintiffs' citation to 42 U.S.C. §671 is immaterial.  The cited section concerns federal

6  payments to states for foster care and adoption services.  It sets out criteria that a state must

7  meet in order to get funds from the federal government to provide foster care services; it does

8  not grant an independent cause of action to individuals.  Plaintiffs' assertions concerning a

9  requirement to consider placing D.R. with extended family is unsupported by the law and

10  must be dismissed.

11          **F.      Doe Defendant Bailiff Performed His Ministerial Duties as Alleged**

12          In their opposition, Plaintiffs fall into the same fallacy reflected in their pleadings

13  against Doe Defendant Bailiff.  Plaintiffs contend that there is some constitutional obligation

14  to accept any excuse provided by a suspect or investigative target.  That is not the case.

15  *Castro v. City of Union City*, 2016 U.S. Dist. LEXIS 52443, at *50-52 (N.D. Cal. Apr. 19,

16  2016) is instructive.  The plaintiff in *Castro* was involved in an altercation with a third party,

17  Mr. Nguyen.  At the scene of the altercation, the defendant deputy investigated and came to

18  the reasonable suspicion that plaintiff had assaulted Mr. Nguyen.  In finding that the arrest of

19  the plaintiff was not a substantive due process violation, the Court found that the officer did

20  not act in conscious disregard of plaintiff's rights when faced with the "[p]laintiff's own

21  protestations that Mr. Nguyen was the aggressor, not plaintiff.  Such protestations are

22  generally insufficient alone to establish a substantive due process claim."  *Id*. at *3; *see also*

23  *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) (law enforcement "is under no

24  obligation to give any credence to a suspect's story [or alibi] nor should a plausible

25  explanation in any sense require the officer to forego arrest pending further investigation if the

26  facts as initially discovered provide probable cause.")

27          In this matter, the defendant deputy is alleged to have received a drug test that was

28  positive for amphetamines.  ECF 19, ¶78.  At that point, there is no need to conduct a further

investigation, as there is probable cause to report the findings to the judge that ordered the testing.

Setting aside the fact that there is no due process violation in disregarding a self-exonerating statement of plaintiff Freeman, the plaintiffs have not alleged that the bailiff exceeded the Court's mandate, as alleged in the opposition. As pled, the bailiff was required to administer a drug test, which he did. The results of that drug test were reported to the Court as alleged. There are no other allegations that demonstrate the bailiff exceeded the scope of the task assigned to him, and he is therefore entitled to judicial immunity.

### G.      Plaintiffs Fail to Rebut Defendants' Arguments Regarding Qualified Immunity

In their motion to dismiss, defendants took the qualified immunity test literally and combined the arguments that plaintiffs failed to plead a constitutional violation, and that there were no clearly defined rights. Plaintiffs did not oppose defendants' arguments that there were no constitutional violations pled in the first amended complaint, so defendants do not repeat those arguments here.[1]

Plaintiffs' opposition to defendants' qualified immunity arguments is simply that case law does not permit the warrantless seizure of children without exigent circumstances and that social workers cannot fabricate evidence. These defined rights, however, do not save plaintiffs' action. When deciding qualified immunity, courts "consider the state of the law at the time of the alleged violation . . . [and] examine the information possessed by the officer to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal." *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007).

It is clear that plaintiff Freeman's rights were not well established. At the time of D.R.'s removal from the hospital, Freeman was not the legal or alleged father of D.R. His parentage required determination by the state court. Plaintiffs provided no case law in their

---

[1] Plaintiffs fail to provide any support for plaintiff Ramirez's claims and the alleged constitutional violations perpetrated against her in their opposition. Plaintiffs' failure to contest the substantive arguments raised by the defense in response to the complaint should be viewed as abandonment of the claims. *See Qureshi*, 2010 U.S. Dist. LEXIS 21843, at *6 n.2.

opposition demonstrating that plaintiff Freeman and his unrecognized parentage situation had a well-established right to a familial relationship with D.R.  At the time of removal, the state court could have denied plaintiff Freeman parental rights, or it could have come to light that plaintiff Freeman was, in fact, not D.R.'s father.  Because he had no legal right to custody or control over D.R., plaintiff Freeman's rights were not well established, and defendants are entitled to qualified immunity to the claims concerning seizure of D.R. from the hospital.

### H.    Plaintiffs Do Not Contest Defendants' *Monell* Arguments

Plaintiffs offer a half-hearted opposition to defendants' arguments that the municipal liability claims have been improperly pled.  They claim that the state appellate case of *In re B.D.*, 35 Cal. App. 5th 803 (2019), is evidence that there is a policy and practice of negligently placing children in foster homes.  But plaintiffs offer no explanation as to the similarity between the fact pattern of *In re B.D.* and the instant case, or even the similarity of policies and practices at issue in the two cases.  *In re B.D.* concerned itself only with the requirement of social workers when reporting to the Court, finding a due process violation by the social workers in specific instances of reports concerning an adoption, and only as to the minor child, and not the parents.  *Id.* at 824.  The Court's decision did not reach any policies or procedures.  Without support for the argument that *In re B.D.* applies to this case, it cannot alone be used to justify plaintiffs' *Monell* causes of action.

Plaintiffs' next argument is that they could amend their complaint to mesh with allegations in other lawsuits.  Plaintiffs cite to three unnamed cases against Contra Costa County alleging due process violations.  Plaintiffs' counsel fails to note that he has brought at least two of these three cases.  *See Kueck v. Contra Costa County*, 18-cv-06004 DMR and *Salah v. Contra Costa County*, 18-cv-00470 YGR.  In effect, plaintiffs are arguing that there is an unconstitutional policy and practice in place because why else would their attorney be suing the County?  Neither of the cases cited above by defendants have resolved and there have been no findings related to *Monell* claims (although the *Monell* claims in the *Kueck* case have been dismissed three times with leave to amend).  Plaintiffs are improperly attempting to use other case allegations to support their own claims relating to a pattern or practice.  The

//

1   pleading standards raised in the defendants' moving papers require plaintiffs to make specific

2   allegations as to the instant action, which they have not done.

3          The final issue with the plaintiffs' *Monell* claim is that it fails to allege any

4   constitutional violations.  And plaintiffs have not countered defendants' arguments that many

5   of the acts alleged in the first amended complaint are not constitutional violations.  Without an

6   underlying constitutional violation, there is no *Monell* claim.  "Section 1983 creates a cause of

7   action based on personal liability and predicated upon fault; thus, liability does not attach

8   unless the individual defendant caused or participated in a constitutional deprivation."  *Vance*

9   *v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citations and quotations omitted).  The *Monell*

10  claims should be dismissed without leave to amend.

## IV.    CONCLUSION

12          Plaintiffs have not rebutted the arguments raised by defendants in the Motion to

13  Dismiss.  In fact, plaintiffs effectively concede many of the arguments made by failing to

14  oppose them.  Based on the foregoing and the arguments made in defendants' motion, this

15  Court should dismiss plaintiffs' action without leave to amend.

     DATED: April 14, 2020                    SHARON L. ANDERSON
                                              COUNTY COUNSEL


                                              By:  ____*/s/ Jason W. Mauck*_____
                                                   JASON W. MAUCK
                                                   Deputy County Counsel
                                                   Attorneys for Defendant
                                                   CONTRA COSTA COUNTY and
                                                   TASHA MIZEL