IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. R., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CONTRA COSTA COUNTY CA, et al.,<br><br>Defendants. | Case No.  19-cv-07152-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT; AFFORDING PLAINTIFFS LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court is defendant Contra Costa County ("County) and Tasha Mizel's ("Mizel") (collectively, "County Defendants") Motion, filed March 24, 2020, "to Dismiss Plaintiffs' First Amended Complaint."[1]  Plaintiffs John Freeman ("Freeman"), Cristina Ramirez ("Ramirez"), and D.R., who is deceased and appears through her successor in interest Freeman, have filed opposition, to which County Defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

## BACKGROUND

The following factual allegations, which are set forth in plaintiffs' First Amended Complaint ("FAC"), are assumed true for purposes of the instant motion.

On June 22, 2018, Ramirez gave birth to D.R.  (<u>See</u> FAC ¶¶ 2, 34.)  On June 24, 2018, D.R.'s "maternal grandmother" told Freeman "he could be the father because the

---

[1] By order filed May 20, 2020, plaintiffs' claims against a third defendant, Marcie Franich ("Franich"), were stayed.  To date, Franich has not appeared in the instant action.

[2] By order filed May 8, 2020, the Court took the matter under submission.

United States District Court
Northern District of California

1    infant looked like him" and Freeman told her "he would take responsibility for the child

2    and that he would assert his paternity the next day."  (See FAC ¶ 3.)³  The next day, June

3    25, 2018, "D.R. was in good health and was about to be discharged from the hospital into

4    the custody of the [maternal grandmother]," when "two social workers from [the] Contra

5    Costa Department of Children and Family Services ['DCFS'] showed up at the hospital

6    without a warrant and seized D.R. from the custody of the maternal grandmother." (See

7    FAC ¶¶ 4, 180.)  DCFS had "learned," on a date not disclosed in the FAC, that Ramirez

8    "tested positive for drug[s]."  (See FAC ¶ 48.)  D.R., however, "was healthy and had no

9    drug withdrawal symptoms."  (See FAC ¶ 49.)

10        On June 28, 2018, DCFS "petitioned the state dependency court of Contra [Costa]

11   County" to "make D.R. a dependent child."  (See FAC ¶¶ 9, 40.)  At a hearing held on the

12   petition, the state court found D.R. to be a dependent of the court.  (See FAC ¶ 137.)  At

13   some point during the "dependency process," DCFS "forced Freeman to take a drug test"

14   (see FAC ¶ 76), which test "came back positive for amphetamine" (see FAC ¶ 78).  "As a

15   result, the court did not let D.R. . . . be placed with Freeman [or] any of D.R.'s relatives."

16   (See FAC ¶ 82.)

17        After the state court determined D.R. would not be placed with any of her relatives,

18   DCFS "selected" Franich and her husband "to act as foster-parents for D.R." and "placed

19   D.R. in their home for at least three months."  (See FAC ¶¶ 84-85.)  On October 27,

20   2018, when D.R. was four months old, she died at Franich's residence.  (See FAC ¶ 1.)

21   On the day D.R. died, Franich had "tightly swaddled D.R. and placed her unsupervised in

22   a DockATot in a crib/bassinet⁴ and, a "few hours later," Franich found D.R. "faced down

23   and unresponsive."  (See FAC ¶¶ 98-99.)  "Franich applied CPR to D.R. as an adult

24

25        ³ Prior to June 24, 2018, Freeman "did not know that [Ramirez] carried his
26   child."  (See FAC ¶ 54.)

27        ⁴ A DockATot is a "multi-functional lounging, playing, chilling, resting and snuggling
     dock for [a] baby," and is not recommended by its manufacturer "for baby sleeping." (See
28   FAC ¶¶ 93, 97.)

United States District Court
Northern District of California

1  victim with two hands instead of gentle compression using only two fingers." (See FAC

2  ¶ 100).  D.R. was "dead when emergency personnel arrived at the scene." (See FAC

3  ¶ 109.)

4  "Mizel told the parents that their daughter died, but she never provided them with

5  any detail of the death." (See FAC ¶ 129.)  D.R.'s body was "cremated upon direction

6  by . . . Mizel who falsely claimed to be D.R.'s next of kin." (See FAC ¶ 117.)  "DCFS

7  never provided the parents with the coroner's report" (see FAC ¶ 133); in late July 2019,

8  Freeman, through counsel, first obtained a copy of it (see FAC ¶ 23).

9  Based on the above factual allegations, plaintiffs assert against County

10  Defendants three claims under 42 U.S.C. § 1983, titled, respectively, "Judicial Deception

11  and Concealment of Evidence," "Seizure Without a Warrant and Interference with

12  Familial Relationship," and "Failure to Protect."[5]  Additionally, plaintiffs assert two state

13  law claims, titled, respectively, "Wrongful Death and Survivor Action" and "Negligence

14  and Negligence Per Se – Usurpation of Infant's Remains, Negligent Infliction of

15  Emotional Distress."

16  **LEGAL STANDARD**

17  Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

18  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

19  under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

20  699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of

21  the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v.

22  Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a

23  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

24  allegations." See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his

25  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

26

27  [5] As set forth below, these claims comprise three "counts" asserted in the Third
   Cause of Action, a § 1983 claim brought against Mizel and individual "Doe" defendants,

28  as well as in the Fourth Cause of Action, a § 1983 claim brought against the County.

1   of the elements of a cause of action will not do."  See id. (internal quotation, citation, and
2   alteration omitted).

3        In analyzing a motion to dismiss, a district court must accept as true all material
4   allegations in the complaint and construe them in the light most favorable to the
5   nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To
6   survive a motion to dismiss, a complaint must contain sufficient factual material, accepted
7   as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.
8   662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be
9   enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.
10  Courts "are not bound to accept as true a legal conclusion couched as a factual
11  allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

### DISCUSSION

13       County Defendants seek dismissal of all Causes of Action asserted against them.
14  The Court considers the claims in the order alleged in the FAC.

### A.  First Cause of Action

16       The First Cause of Action, titled "Wrongful Death and Survivor Action," is brought
17  by all plaintiffs against County Defendants.[6]  Plaintiffs allege County Defendants are
18  liable for D.R.'s death for the reason that they failed to place D.R. "in the most
19  appropriate home environment" (see FAC ¶ 146.a), failed to "give preferential
20  consideration" to placing D.R. with relatives (see FAC ¶ 146.b), and failed to "establish,
21  implement and follow procedures to ensure the health, safety, and well-being of . . .
22  D.R." (see FAC ¶ 147).  Additionally, plaintiffs allege, the County is "vicariously liable for
23  the negligence of Franich committed during the scope of her contract as a foster parent."
24  (See FAC ¶ 151.)

25       County Defendants argue the First Cause of Action is barred by the applicable

---

27       [6] The First Cause of Action is also brought against Franich, a private party who, as
    noted, has not yet appeared.  The Court's findings stated herein do not apply to plaintiffs'
28  claims against Franich.

United States District Court
Northern District of California

United States District Court
Northern District of California

statute of limitations.

"If the running of the statute [of limitations] is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir.1980).  In California, two statutes of limitations pertain to state law claims asserted against public entities.  First, under the Government Claims Act, a "claim relating to a cause of action for death or for injury to [a] person" must be presented to the public entity "not later than six months after the accrual of the cause of action." See Cal. Gov't Code § 911.2(a).  Second, where a plaintiff presents a claim, and the public entity provides the claimant with written notice of rejection, the claimant must file a civil action against the entity no later than six months after "the date such notice is personally delivered or deposited in the mail." See Cal. Gov't Code § 945.6(a)(1).  Both deadlines also apply to claims against employees of the public entity.  See Cal. Gov't Code § 950.2.

### 1. Ramirez

"[T]the statute of limitations on a wrongful death action begins to run at the time of death." Kincaid v. Kincaid, 197 Cal. App. 4th 75, 80 (2011).  Consequently, as D.R. died on October 27, 2018 (see FAC ¶ 11), Ramirez was required, in the absence of an exception to the statute of limitations, to present a claim based on the alleged wrongful death of D.R. no later than six months thereafter.  Ramirez, however, did not present a claim to the County until March 11, 2020 (see Defs.' Req. for Judicial Notice Ex. D),[7] and the FAC does not include any facts that could support a finding that an exception to the statute of limitations exists, see, e.g., Udom v. Fonseca, 846 F.2d 1236, 1238 (9th Cir. 1988) (holding, "[i]n order to invoke the benefit of tolling, the plaintiff must allege facts that, if believed, would provide a basis for tolling").

---

[7] County Defendants' unopposed request that the Court take judicial notice of the date and content of the claim form presented by Ramirez, as well as the claim forms presented by Freeman and the Estate of D.R., is hereby GRANTED.  See Clarke v. Upton, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010) (taking judicial notice of filing date and content of claim form).

1   Accordingly, to the extent the First Cause of Action is brought on behalf of

2   Ramirez, the First Cause of Action is subject to dismissal.

3   **2.  Freeman and D.R.**

4   On March 12, 2019, i.e., less than six months after D.R.'s death, Freeman

5   presented to the County a claim, on his own behalf and on behalf of the Estate of D.R.,

6   asserting injuries based on the alleged wrongful death of D.R. (see Defs.' Req. for

7   Judicial Notice Ex. A); the claim was denied by the County on April 16, 2019, and notice

8   of the denial was mailed to Freeman and the Estate of D.R. that same date (see id.).

9   Also, that same date, April 16, 2019, Freeman presented to the County an amended

10  claim, which claim included additional factual allegations in support of the wrongful death

11  claim; the amended claim was denied by the County on April 29, 2019, and notice of the

12  denial was mailed to Freeman and the Estate of D.R. that same date. (See id. Ex. B.)

13  Lastly, on September 17, 2019, Freeman presented to the County a second amended

14  claim, which claim included further factual allegations in support of the wrongful death

15  claim; the second amended claim was denied by the County on September 19, 2019, and

16  notice of the denial was mailed to Freeman and the Estate of D.R. that same date.  (See

17  id. Ex. C.)

18  The initial complaint in the above-titled action was filed on October 29, 2019, i.e.,

19  six months after the date on which the County mailed Freeman and the Estate of D.R.

20  notice of the denial of the first amended claim.  County Defendants argue Freeman and

21  D.R.'s wrongful death claim is untimely, as the complaint was filed more than six months

22  from the date on which the notice of the denial of the original claim was sent to Freeman

23  and the Estate of D.R.

24  Under California law, "[a] claim may be amended at any time before the expiration

25  of the period designated in Section 911.2 . . ., if the claim as amended relates to the

26  same transaction or occurrence which gave rise to the original claim," and such

27  "amendment shall be considered a part of the original claim for all purposes."  See Cal.

28  Gov't Code § 910.6(a).  Because the term "'for all purposes' necessarily includes prior

6

1  notifications regarding action or non-action taken on the [original] claim," "a denial of the

2  first government tort claim serves as the mandatory trigger for the six-month limitations

3  period and this time period is unaffected by an amendment to that claim."  See Sofranek

4  v. Merced County, 146 Cal. App. 4th 1238, 1248 (2007).  Consequently, irrespective of

5  Freeman and the Estate of D.R.'s having amended their claim, their deadline to institute a

6  civil action was October 16, 2019, i.e., six months from the date they were mailed notice

7  of the denial of their original claim.

8  　　　　Accordingly, to the extent the First Cause of Action is brought on behalf of

9  Freeman and D.R., the First Cause of Action is subject to dismissal.

10  **B.  Second Cause of Action**

11  　　　　The Second Cause of Action, titled "Negligence and Negligence Per Se –

12  Usurpation of Infant's Remains, Negligent Infliction of Emotional Distress," is brought by

13  all plaintiffs against Mizel and the "Doe" defendants.  In support of such claim, plaintiffs

14  allege defendants "prevented the grieving parents and other relatives from making

15  fundamental decisions on the arrangements for their daughter's funeral and disposition of

16  her remains" (see FAC ¶ 156), "did not allow the parents and other relatives an

17  opportunity to view the body and arrange for a proper funeral for D.R." (see FAC ¶ 157),

18  and "improperly dispos[ed] of the remains" (see FAC ¶ 158).

19  　　　　**1.  Ramirez**

20  　　　　As noted, Ramirez submitted a claim to the County on March 11, 2020.  County

21  Defendants argue said claim was untimely, as it was not submitted to the County within

22  six months of the date on which D.R. died.  As set forth above, a claim for wrongful death

23  accrues on the date of the death.  The Second Cause of Action, however, is not based on

24  a theory of wrongful death, but, rather, on events occurring after the death.  Plaintiffs

25  have not alleged the date(s) on which those events occurred, and County Defendants

26  have not challenged their failure to do so, nor have they sought judicial notice of any

27  evidence reflecting the time of accrual.

28  　　　　Accordingly, to the extent the Second Cause of Action is brought on behalf of

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Ramirez, the Second Cause of Action is not subject to dismissal.

2  **2.  Freeman and D.R.**

3  The original claim submitted on behalf of Freeman and D.R. alleged, as did their

4  first and second amended claims, that the County is liable for causing "emotional

5  distress" as a result of "[i]mproper disposal of [D.R.'s] body."  (See Defs.' Req. for Judicial

6  Notice Exs. A-C).[8]  As set forth above, Freeman and D.R. did not file the instant action

7  within six months of the County's denial of their original claim.

8  Accordingly, for the reasons stated above with respect to the First Cause of

9  Action, the Second Cause of Action, to the extent it is brought on behalf of Freeman and

10  D.R., is subject to dismissal.

11  **C.  Third Cause of Action**

12  The Third Cause of Action is brought pursuant to 42 U.S.C. § 1983, and comprises

13  three "Counts," which Counts the Court next considers in turn.

14  **1.  Count One: "Judicial Deception and Concealment of Evidence"**

15  Count One in the Third Cause of Action, brought on behalf of Freeman only and

16  asserted against Mizel and the Doe defendants, is based on an allegation that, on three

17  occasions, Mizel and other County employees deprived Freeman of due process

18  "through judicial deception and concealment of evidence."  (See FAC ¶ 163.)

19  A plaintiff may base a § 1983 claim on a theory that the defendant engaged in

20  "deliberate fabrication" of evidence, where such deliberate act caused the plaintiff to

21  suffer a "deprivation of liberty," see Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017),

22  such as the loss of custody of a child as a result of a social worker's presentation of

23  falsified evidence to a court conducting a child dependency proceeding, see, e.g.,

24  Hardwick v. County of Orange, 844 F.3d 1112, 1116-17 (9th Cir. 2017) (recognizing due

25

26  ───────────────

27  [8] Although, as noted, the Second Cause of Action is brought on behalf of Ramirez, Freeman, and D.R., plaintiffs do not explain, either in the FAC or their opposition, how D.R. can bring a claim based on events occurring after her death.  As this issue is not

28  addressed by County Defendants, however, the Court does not further consider it herein.

United States District Court
Northern District of California

1  process right to be free from "deliberate government use of perjured testimony or

2  fabricated evidence in the dependency court proceeding").

3          **a.  Freeman's Assertion of Parental Rights**

4        As noted, plaintiffs allege that D.R. was born on June 22, 2018, that, on June 24,

5  2018, Freeman first learned he might be the father, and that, on June 25, 2018,

6  two DCFS employees took custody of D.R.  Plaintiffs also allege that after Freeman

7  learned of the June 25 "seizure," he "immediately contacted DCFS to assert his parental

8  rights" (<u>see</u> FAC ¶ 6), but that, at a "detention hearing" conducted by a state court judge

9  on June 28, 2018, Mizel and the Doe defendants "concealed from the court that Freeman

10  had promptly stepped forward to assume his parental responsibility" (<u>see</u> FAC ¶ 56, 169).

11  Plaintiffs further allege the state court judge "stated that Freeman did not step up soon

12  enough so she would not grant him status as the presumed father." (<u>See</u> FAC ¶ 167

13  n.5.)

14        County Defendants argue plaintiffs' allegations are insufficient to support a finding

15  that the asserted concealment deprived Freeman of due process.  The Court, for the

16  reasons stated below, agrees.

17        Plaintiffs' theory appears to be that the state court determined Freeman was not

18  the presumed father because, at least in part, DCFS employees had concealed facts

19  from the state court that would have supported a finding that, in fact, he was the

20  presumed father.[9]  Plaintiffs fail to allege, however, that any DCFS employee was aware

21  of, and withheld from the state court, any fact potentially relevant to the determination of

22  Freeman's status.  A failure by DCFS employees to advise the state court that Freeman,

23  prior to the June 28 hearing, had told DCFS he was "assert[ing] his parental rights" (<u>see</u>

24  FAC ¶ 6) could not have deprived Freeman of a liberty interest, as such assertion,

25

26            [9] "There are three types of fathers in juvenile dependency law: presumed,
27  biological, and alleged."  <u>In re P.A.</u>, 198 Cal. App. 4th 974, 979 (2011).  "Presumed father
status ranks highest," as "[o]nly a statutorily presumed father is entitled to . . . custody."
28  <u>See</u> <u>id.</u> (internal quotation and citation omitted).

United States District Court
Northern District of California

1   without more, would not support a finding by the state court that Freeman was D.R.'s

2   presumed father.  Rather, under state law, a person can be found to be a "presumed

3   parent" only under certain circumstances, see Cal. Fam. Code § 7611,[10] none of which

4   circumstances are alleged in the FAC, let alone that any DCFS employee was aware of

5   such circumstance.

6            Accordingly, to the extent Count One in the Third Cause of Action is based on a

7   claim that County employees concealed from the state court Freeman's assertion of his

8   parental rights, Count One is subject to dismissal.

9                            **b.  Results of Drug Test**

10            As noted, during the state court dependency proceedings, Freeman tested positive

11   for "amphetamine" (see FAC ¶ 78), and, as a result, the state court "did not let D.R. . . .

12   be placed with Freeman [or] any of D.R.'s relatives" (see FAC ¶ 82.)  Plaintiffs allege that,

13   after Freeman was made aware of the test result, he told Mizel "the test was a false

14   positive because he had taken at the time of the drug test, Zantac, an over-the-counter

15   medication for heartburn."  (See FAC ¶ 80.)  Plaintiffs further allege that "DCFS," an

16   apparent reference to Mizel, "failed to provide exculpatory evidence to the court,"

17   assumedly the Zantac explanation (see FAC ¶ 81), and that the "bailiff" who administered

18   the drug test did not "ascertain[ ] whether the test result could be a false-positive" before

19   the result was "announc[ed] to the dependency court" (see FAC ¶ 79).  County

20   Defendants argue plaintiffs have failed to allege that any County employee falsified

21   evidence or engaged in a fabrication pertaining to the drug test results.  The Court

22   agrees.

23   _____

24            [10] Most of the circumstances pertain to the time at which such individual married,
     or attempted to marry, the natural mother.  See Cal. Fam. Code § 7540(a); Cal. Fam.
25   Code § 7611(a)-(c).  The only other circumstances under which presumed parenthood
     may be found are where (1) such individual and the natural mother both sign a "voluntary
26   declaration of paternity," see Cal. Fam. Code § 7571(a); see also Cal. Fam. Code
     §§ 7571(d)- (f), (j)-(k); (2) such individual "receives the child into their home and openly
27   holds out the child as their natural child, see Cal. Fam. Code § 7611(d); and (3) "the child
     is in utero after the death of [such individual]" and a number of specified conditions are
28   met, see Cal. Fam. Code § 7611(e).

1    Plaintiffs' theory is that Mizel, other DCFS employees, and the "bailiff" were

2    constitutionally required to advise the state court of "exculpatory evidence," specifically,

3    that Freeman had provided Mizel with an explanation for why he tested positive for

4    amphetamine.  In criminal cases, under <u>Brady v. Maryland</u>, 373 U.S. 87 (1963), the

5    prosecution violates due process where it withholds from the accused material evidence

6    favorable to the accused.  <u>See id.</u> at 87 (holding "suppression by the prosecution of

7    evidence favorable to the accused . . . violates due process where the evidence is

8    material").  Even assuming the principle set forth in <u>Brady</u> applies in dependency

9    proceedings, however, there was no violation of due process here, as Freeman was

10   always aware of the explanation he provided to Mizel and could have advised the state

11   court of it.

12   Accordingly, to the extent Count One in the Third Cause of Action is based on a

13   claim that County employees failed to disclose exculpatory evidence in connection with

14   Freeman's positive drug test, Count One is subject to dismissal.

15                              **c.  Alleged Cover Up**

16   As noted, plaintiffs allege that, after D.R. died, Mizel had D.R. cremated, and that

17   the coroner's report was not provided to Freeman until several months after it was

18   written.  Plaintiffs allege those actions were taken pursuant to a "conspir[acy]" between

19   Mizel and other DCFS employees to "cover up" a "suspicious death."  (<u>See</u> FAC ¶ 175.)

20   According to plaintiffs, Mizel had D.R. cremated "so that an independent autopsy could

21   not be carried out" and delayed the release of the county coroner's report in an attempt to

22   "run[ ] out the clock on the six months plaintiffs had to file a Notice of Claims against the

23   County under the Government Torts Claim Act."  (<u>See id.</u>)  County Defendants argue

24   plaintiffs have failed to identify any liberty interest of which Freeman was denied as a

25   result of the alleged conspiracy to cover up details about D.R.'s death.

26   Although not clearly expressed, it appears plaintiffs base this claim on Freeman's

27   interest in pursuing the claims asserted in the instant action.  The Ninth Circuit has

28   observed that allegations supporting a finding that a defendant engaged in a "cover-up of

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  [constitutional] violations" may "state a federally cognizable claim provided that [the

2  defendant's] actions can be causally connected to a failure to succeed in [a] lawsuit."

3  See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 625 (9th Cir. 1988).  Such

4  a claim, however, is subject to dismissal without prejudice where the "ultimate resolution

5  of [a pending] suit remains in doubt."  See id.  Here, the instant action remains pending,

6  and, to the extent claims brought on behalf of Freeman are subject to dismissal, plaintiffs,

7  as set forth below, will be afforded leave to amend.  Consequently, any claim that

8  Freeman will be unable, as a result of the alleged conspiracy, to prove any claim he

9  wishes to assert in the instant action, is at this time "not ripe for judicial consideration."

10 See id. (holding plaintiff's claim that defendants engaged in "cover-up" of Fourth

11 Amendment violations "not ripe" where claims alleging Fourth Amendment violations

12 were pending resolution).

13     Accordingly, to the extent Count One in the Third Cause of Action is based on a

14 claim that County employees conspired to cover up details of D.R.'s death, Count One is

15 subject to dismissal.

16     **2. Count Two:  "Seizure Without a Warrant and Interference with Familial**

17 **Relationship"**

18     Count Two in the Third Cause of Action, brought on behalf of all plaintiffs against

19 certain of the "Doe" defendants, is based on the allegation that said Doe defendants,

20 described by plaintiffs as "DCFS social workers, whose identities are not currently known,

21 who took D.R. from the hospital," seized D.R. without a warrant or exigent circumstances,

22 in violation of D.R.'s Fourth Amendment rights, as well as the Fourteenth Amendment

23 rights of Ramirez and Freeman.  (See FAC ¶¶ 179, 183.)  Additionally, Count Two is

24 based on the allegation that Doe defendants, not otherwise described in the FAC, denied

25 Ramirez and Freeman their "rights under [the] 14th Amendment to be informed of the

26 cause of the death of their child" (see FAC ¶ 184), and did not provide them "a say in the

27 disposal of the body" or the chance to "conduct a funeral for their child" (see id.).

28 //

### a.  Seizure of D.R. Without Warrant

"The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." Mabe v. San Bernardino County, 237 F.3d 1101, 1107 (9th Cir. 2001).  Consequently, "[g]overnment officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." See id. at 1106 (internal quotation and citation omitted).

As to Ramirez and D.R., County Defendants make no argument in support of dismissal, and, consequently, to the extent their claim is based on the seizure, it will not be dismissed.[11]

As to Freeman, County Defendants argue plaintiffs have failed to plead deprivation of a liberty interest because plaintiffs fail to allege any facts to support a finding that, at the time of the seizure, Freeman had any parental rights in which DCFS employees could have interfered.  The Court agrees.  As noted, Freeman, on the day before the seizure, was told by Ramirez's mother that he might be D.R.'s father "because the baby looked like him."  (See FAC ¶ 54.)  Under state law, such a comparison might, at best, have sufficed to give Freeman the status of "alleged biological father," i.e., "a man who may be the father of a child, but whose biological paternity has not been established." See In re Christopher M., 113 Cal. App. 4th at 159.  An alleged biological father, however, "does not have a current interest in a child." See id.

Accordingly, to the extent Count Two in the Third Cause of Action is asserted on

---

[11] County Defendants do argue "the Rooker-Feldman doctrine bars claims for any action taken after the detention hearing concerning D.R." (see Defs.' Mot. at 9:1), which the Court understands as a contention that plaintiffs cannot recover, to the extent based on the seizure, any damages beyond the date the state court issued its detention order. As the period for which damages are sought is not set forth in the FAC, however, this argument is premature.

United States District Court
Northern District of California

1    behalf of Freeman and is based on D.R.'s seizure, the Count Two is subject to dismissal.

2                 **b.  Post-Death Events**

3          To the extent Count Two is based on the theory that Doe defendants did not

4    inform Ramirez and Freeman of "the cause of [D.R.'s] death," did not provide them "a say

5    in the disposal of the body," and did not give them a chance to "conduct a funeral for their

6    child" (see FAC ¶ 184), Count Two is subject to dismissal, as the FAC includes no factual

7    allegations to support a finding that any Doe defendant engaged in such conduct.

8    Rather, the FAC identifies Mizel as the person who did not provide Ramirez and Freeman

9    "with any detail of the death" (see FAC ¶ 129) and who caused the cremation to occur

10    (see FAC ¶ 117).  Although the FAC might be understood as including a conclusory

11    assertion that one or more Doe defendants conspired with Mizel to cremate D.R. without

12    the consent of Ramirez and Freeman (see FAC ¶ 122), plaintiffs plead no facts to support

13    a finding that any such agreement to violate plaintiffs' rights existed.  See Olsen v. Idaho

14    State Board of Medicine, 363 F.3d 916, 929-30 (9th Cir. 2004) (affirming dismissal of

15    claim alleging "conspiracy to violate constitutional rights," where complaint lacked factual

16    allegations to support finding of "agreement amongst the [defendants} to violate

17    [plaintiff's] constitutional rights").

18          Accordingly, to the extent Count Two in the Third Cause of Action is based on

19    post-death events, Count Two is subject to dismissal.

20            **3.  Count Three: "Failure to Protect"**

21          Count Three in the Third Cause of Action, brought on behalf of D.R. against Mizel

22    and the Doe defendants, is based on the theory that said defendants "put[ ] D.R. in an

23    unsafe environment" (see FAC ¶ 190) and, after D.R.'s death, failed to conduct a

24    "thorough and complete investigation into the actual causes of death" (see FAC ¶ 195).

25               **a.  Placement With/Supervision of Franich**

26          To the extent the claim is based on a theory that Mizel and any of the Doe

27    defendants put D.R. in an unsafe environment, County Defendants argue the FAC does

28    not include sufficient facts to support such a claim.  The Court agrees.

1    Children found to be dependents of a court hold "protected liberty interests in

2    being shielded from harm inflicted by a foster parent," see Tamas v. Department of Social

3    & Health Services, 630 F.3d 833, 842 (9th Cir. 2010), and are deprived of said liberty

4    interests if social workers "act with such deliberate indifference to the liberty interest that

5    their actions shock the conscience," see id. at 844 (internal quotation and citation

6    omitted).  Here, as County Defendants correctly observe, the FAC includes insufficient

7    facts to support a finding that Mizel, or any other County employee, acted with deliberate

8    indifference to D.R.'s safety, either at the time D.R. was placed with Franich or during the

9    approximately three months in which she was in Franich's care.  Rather, the facts alleged

10   support, at best, a finding of negligence.  (See, e.g., FAC ¶ 88 (alleging unnamed DFCS

11   employees "failed to ensure" Franich had "sufficient knowledge and skills to take care of

12   an infant, such as knowledge of safe sleeping practice[s] and how to administer CPR to

13   an infant"); FAC ¶ 90 (alleging Mizel "failed to supervise and monitor [ ] Franich").)

14   Negligence, even if "gross," is, however, insufficient to support a deliberate indifference

15   claim.  See L.W. v. Grubbs, 92 F.3d 894, 899 (9th Cir. 1996) (holding, where plaintiff

16   alleged defendant was deliberately indifferent to her safety needs, "tortious conduct,

17   when proved, may well result in some state law remedy, but gross negligence, in and of

18   itself, is not unconstitutional").

19   Accordingly, to the extent Count Three in the Third Cause of Action is based on a

20   claim that County employees placed D.R. in an unsafe environment, Count Three is

21   subject to dismissal.

22   **b. Failure to Investigate Cause of Death**

23   As noted, the claim is also based on the theory that Mizel and the Doe defendants

24   did not conduct a sufficient investigation into the cause of D.R.'s death.  In particular,

25   plaintiffs allege, Mizel and the Doe defendants "ignored suspicious injuries to the back of

26   [D.R.'s] head, the internal bleeding, and the bruising of internal organs."  (See FAC

27   ¶ 195.)

28   //

1   Although not clearly expressed, D.R.'s claim appears to be that the lack of such

2   investigation was part of an alleged conspiracy to cover up the cause of death in an effort

3   to hinder the filing of the instant lawsuit. (See FAC ¶¶ 175, 187.) As set forth above with

4   respect to Count One, however, such a claim is not ripe at this time. See Karim-Panahi,

5   839 F.2d at 625.

6   Accordingly, to the extent Count Three in the Third Cause of Action is based on a

7   claim that Mizel and the Doe defendants conducted an insufficient investigation into the

8   cause of death, Count Three is subject to dismissal.

9   **D. Fourth Cause of Action**

10   The Fourth Cause of Action, brought pursuant to § 1983, is asserted by all

11   plaintiffs against the County, and is based on the theory that the County is liable for the

12   alleged constitutional violations on which the Third Cause of Action is based, i.e., the

13   conduct on which plaintiffs base Counts One, Two, and Three asserted therein.

14   A local government entity may be sued under § 1983 where an allegedly

15   unconstitutional action "implements or executes" a municipal policy or custom. See

16   Monell v. Department of Social Services, 436 U.S. 658, 690 (1978).

17   With one exception, the Court has found the claims asserted in the Third Cause of

18   Action are subject to dismissal. As to such insufficiently pleaded claims, a Monell claim

19   against the County necessarily fails. See Villegas v. Gilroy Garlic Festival Ass'n, 541

20   F.3d 950, 957 (9th Cir. 2008) (holding "[b]ecause there is no constitutional violation, there

21   can be no municipal liability").

22   The sole claim in the Third Cause of Action not subject to dismissal is the claim,

23   asserted on behalf of Ramirez and D.R., that D.R. was seized without a warrant or

24   exigent circumstances. To the extent the Fourth Cause of Action is based on a claim that

25   D.R. was seized pursuant to a County policy or custom, County Defendants argue the

26   Fourth Cause of Action is conclusory in nature. As set forth below, the Court agrees.

27   Prior to 2009, the Ninth Circuit set a low threshold for pleading a municipal liability

28   claim, requiring only "a bare allegation that the individual officers' conduct conformed to

16

1    official policy, custom, or practice."  See Karim-Panahi, 839 F.2d at 624 (internal

2    quotation and citation omitted).  In light of the Supreme Court's 2009 decision in Iqbal,

3    however, which rejected "[t]hreadbare recitals of the elements of a cause of action[ ]

4    supported by mere conclusory statements," see Iqbal, 556 U.S at 678, the Ninth Circuit

5    now requires that a complaint asserting a municipal liability claim "contain sufficient

6    allegations of underlying facts to give fair notice and to enable the opposing party to

7    defend itself effectively," see AE ex rel. Hernandez, 666 F.3d, 631, 637 (9th Cir. 2012)

8    (internal quotation and citation omitted).

9          Here, as County Defendants observe, plaintiffs identify the factual allegations

10   pertinent to D.R.'s removal and then assert, as a conclusion, a municipal policy to

11   engage in such activity existed.  (See, e.g., FAC ¶ 204.b (alleging County has policy of

12   "[h]aving social workers tak[e] newborns from maternity wards without a warrant when

13   there was a positive drug test for [the] mother or baby without any consideration for

14   placement with other family members"; FAC ¶ 204.g. (alleging County does not train

15   social workers "so that they know not to violate the Fourth Amendment rights of children

16   by warrantless seizures without imminent danger or without danger within the time to

17   secure a warrant").)  As these conclusions are unsupported by underlying factual

18   allegations, the Fourth Cause of Action, to the extent based on D.R.'s seizure, is subject

19   to dismissal.  See AE, 556 F.3d at 637; see also Bagley v. City of Sunnyvale, 2017 WL

20   5068567, at *5 (N.D. Cal. 2017) (holding "[l]iability for improper custom may not be

21   predicated on isolated or sporadic incidents"; noting "[w]here courts have allowed Monell

22   claims to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of

23   alleged violations") (citing cases).

24         Accordingly, the Fourth Cause of Action is subject to dismissal.

25   //

26   //

27   //

28   //

United States District Court
Northern District of California

17

**CONCLUSION**

For the reasons stated above, County Defendants' motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. The First Cause of Action is hereby DISMISSED.[12]

2.  The Second Cause of Action is hereby DISMISSED to the extent it is asserted on behalf of Freeman and D.R.

3.  Counts One and Three in the Third Cause of Action are hereby DISMISSED, and Count Two in the Third Cause of Action is hereby DISMISSED (a) to the extent it is alleged on behalf of Freeman and (b) to the extent it is based on events occurring after D.R.'s death.

4.  The Fourth Cause of Action is hereby DISMISSED.

5.  In all other respects, the motion is DENIED.

If plaintiffs wish to amend for purposes of curing any of the deficiencies identified above, they shall file their Second Amended Complaint no later than October 2, 2020.

In light of the above, the Case Management Conference is hereby CONTINUED from September 25, 2020, to December 18, 2020, at 10:30 a.m.  A Joint Case Management Statement shall be filed no later than December 11, 2020.

**IT IS SO ORDERED.**

Dated: September 15, 2020

MAXINE M. CHESNEY
United States District Judge

---

[12] As noted, although the First Cause of Action is brought against all named defendants, this finding does not apply to defendant Franich.