IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

D. R., et al.,

Plaintiffs,

v.

CONTRA COSTA COUNTY CA, et al.,

Defendants.

Case No.  19-cv-07152-MMC

**ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Before the Court is defendant Contra Costa County ("County") and Tasha Mizel's ("Mizel") (collectively, "County Defendants") Motion, filed November 19, 2021, "to Dismiss Plaintiffs' Third Amended Complaint."  Plaintiffs Cristina Ramirez ("Ramirez"), John Freeman ("Freeman"), and D.R., who is deceased and appears through her successor in interest Freeman, have filed opposition, to which County Defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

The following factual allegations, which are set forth in plaintiffs' Third Amended Complaint ("TAC"), are assumed true for purposes of the instant motion.

On June 22, 2018, Ramirez gave birth to D.R.  (See TAC ¶¶ 1, 47.)  That evening, "unknown social workers came to the maternity ward" after "the hospital reported the presence of methamphetamine in the blood tests of both mother and daughter" (see TAC ¶ 3), and "requested a hold preventing D.R. from leaving the hospital even though D.R. was healthy and suffered no adverse withdrawal symptoms" (see TAC ¶ 4).  On a date

---

[1] By order filed January 4, 2022, the Court took the matter under submission.

1   not disclosed in the TAC, Ramirez "left the hospital and left D.R. in the care and custody

2   of the MGM [maternal grandmother] as she had previously made such arrangement with

3   the MGM before the delivery."  (See TAC ¶ 8.)

4        On June 24, 2018, the MGM contacted Freeman and told him "he could be the

5   father after noticing [a] striking resemblance," and Freeman responded "he would take

6   responsibility for the child and that he would assert his paternity the next day."  (See TAC

7   ¶¶ 5, 7.)[2]  The next day, June 25, 2018, "two social workers from [the] Contra Costa

8   Department of Children and Family Services ['DCFS'] showed up at the hospital without a

9   warrant to seize D.R. from the . . . MGM."  (See TAC ¶ 9.)  The social workers "refused to

10  let the MGM take her grand-daughter home on the excuse that her husband, the

11  maternal step-grandfather, had a DV [domestic violence] record some 35 years ago when

12  he was in his late teen[s]."  (See TAC ¶ 66.)

13       On June 28, 2018, DCFS "petitioned the state dependency court of Contra [Costa]

14  County . . . for custody of the child" (see TAC ¶ 13), and the state court conducted a

15  "detention hearing" that same date (see TAC ¶ 71).  At said hearing, Freeman and "other

16  relatives" stated "they [were] willing, able, and ready to take in D.R."  (See TAC ¶ 72.)

17  The state court, however, found D.R. to be a "dependent" of the court.  (See TAC ¶ 161.)

18       Thereafter, DCFS "placed" D.R. with "a foster mother, Marcie Franich ['Franich'],"

19  at whose home D.R. stayed "for at least three months."  (See TAC ¶¶ 15, 89.)  On

20  October 27, 2018, when D.R. was four months old, she died at Franich's home.  (See

21  TAC ¶ 1.)  On the day D.R. died, Franich had "tightly swaddled D.R. and placed her

22  unsupervised in a DockATot"[3] and, a "few hours later," Franich found D.R. "faced down

23  and unresponsive."  (See TAC ¶¶ 102-03.)  "Franich applied CPR to D.R. as an adult

24  _____

25       [2] Plaintiffs allege that, prior to June 24, 2018, Freeman "had no previous notice
    that the baby was his because Ramirez did not inform him of the paternity."  (See TAC
26  ¶ 6.)

27       [3] A DockATot® is a "multi-functional lounging, playing, chilling, resting and
    snuggling dock for [a] baby," and is not recommended by its manufacturer "for an infant
28  to sleep in unsupervised."  (See TAC ¶¶ 97-98.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1  victim with two hands instead of gentle compression using only two fingers."  (See TAC

2  ¶ 104.)  D.R. was "taken by ambulance to a hospital where she was pronounced dead."

3  (See TAC ¶ 105.)

4  Mizel, who was employed by DCFS as "the case social worker for D.R." (see TAC

5  ¶ 52), "told the parents that their daughter died, but she never provided them with any

6  detail of the death" (see TAC ¶ 135.  Mizel obtained consent from Freeman to cremate

7  the body, which consent plaintiffs describe as being "fraudulently induced," in that

8  Freeman was "in distress and mourning" and "not in a state of mind to be able to give

9  consent."  (See TAC ¶ 119.)  D.R.'s body was cremated "upon direction by . . . Mizel."

10  (See TAC ¶ 121.)

11  DCFS "could not get the findings from the Contra Costa Coroner's Office until April

12  2019" (see TAC ¶ 106), and Freeman did not receive a copy of an autopsy report issued

13  by the Coroner until "late July 2019" (see TAC ¶ 26).  The report states D.R. had "internal

14  bleeding in her abdominal cavity and bruises to her internal organs and on the back of

15  her head" and listed the cause of death as "probable cardiac rhythm disorder

16  (dysrhythmia)."  (See TAC ¶ 111.)

17  Based on the above factual allegations, plaintiffs assert against County

18  Defendants four claims under 42 U.S.C. § 1983, titled, respectively, "Judicial Deception

19  and Concealment of Evidence," "Seizure Without a Warrant and Interference with

20  Familial Relationship," "Failure to Protect," and "Violation of Right Under the Due Process

21  Clause Under the Fourteenth Amendment [–] Obstruction of Relative Placement," as well

22  as "Monell Claims" premised on three of said four claims.  Additionally, plaintiffs assert

23  against County Defendants two state law claims, titled, respectively, "Wrongful Death and

24  Survivor Action" and "Negligence and Negligence Per Se – Usurpation of Infant's

25  Remains, Negligent Infliction of Emotional Distress."

26  **LEGAL STANDARD**

27  Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

28  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

3

1    under a cognizable legal theory."  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

2    699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of

3    the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v.

4    Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a

5    complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

6    allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his

7    entitlement to relief requires more than labels and conclusions, and a formulaic recitation

8    of the elements of a cause of action will not do."  See id. (internal quotation, citation, and

9    alteration omitted).

10          In analyzing a motion to dismiss, a district court must accept as true all material

11   allegations in the complaint and construe them in the light most favorable to the

12   nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

13   survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

14   as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

15   662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be

16   enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.

17   Courts "are not bound to accept as true a legal conclusion couched as a factual

18   allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

20          In an order filed September 15, 2020 ("September 15 Order"), the Court granted

21   County Defendants' motion to dismiss a number of claims in plaintiffs' First Amended

22   Complaint ("FAC") and afforded plaintiffs leave to amend.

23          County Defendants now seek dismissal of all Causes of Action, as asserted in the

24   TAC[4] against the County, Mizel, and various "Doe" defendants, who, along with Mizel,

25

26          ———————————
27          [4] As noted, the operative complaint is the TAC.  Upon dismissal of the FAC,
     plaintiffs timely filed a Second Amended Complaint, to which, by agreement of the
     parties, no defendant filed a response.  Thereafter, by stipulation of the parties, approved
28   by the Court, plaintiffs filed the TAC.

United States District Court
Northern District of California

1    are alleged to be County employees.  The Court considers the claims in the order alleged

2    in the TAC.

3    **A.  First Cause of Action**

4         In its September 15 Order, the Court dismissed the First Cause of Action, as

5    alleged in the FAC, finding it was subject to dismissal as barred by the applicable statutes

6    of limitations.  (See September 15 Order at 4:25-7:9.)

7         In the TAC, the First Cause of Action, titled "Wrongful Death and Survivor Action,"

8    consists of two "Counts," which Counts the Court considers in turn.

9         **1.  Count 1**

10        In Count 1, brought on behalf of Ramirez and Freeman against "Does 1 Through

11   50" (see TAC at 18:22-23),[5] who, although not clearly defined by plaintiffs, the Court

12   understands to be employees of the "Contra Costa County Coroner Office" (see TAC

13   ¶ 157-58).  In particular, plaintiffs allege that "the coroner listed the cause of [D.R.'s]

14   death as 'probable cardiac rhythm disorder (dysrhythmia)'" (see TAC ¶ 112) but "did not

15   diligently investigate other possible causes of death" or "follow all required protocols

16   under law for the autopsy where there could be a SIDS death" (see TAC ¶¶ 157-58).

17        County Defendants argue Count 1 is barred by the applicable statutes of

18   limitations.

19             **a.  Ramirez**

20        As to Ramirez, the Court, in its September 15 Order, found that a claim for

21   damages against a government agency and its employees must be presented to the

22   agency no more than six months after the date a claim accrues, that a claim for wrongful

23   death accrues on the date of the death, and that Ramirez did not present her claim to the

24   County until more than sixteen months after D.R.'s death.  (See September 15 Order at

25   4:25-6:2.)

26

27        ─────────────────
         [5] Count 1 in the First Cause of Action is also asserted against Franich, who has
28   filed an answer to the TAC.  The Court's findings stated herein do not apply to Franich.

United States District Court
Northern District of California

In the TAC, plaintiffs have added the following new allegations.  First, plaintiffs allege Ramirez "did not know about the cremation and any facts [about] the circumstances of the death in the autopsy reports until about a week before the filing of this lawsuit on October 29, 2019" and, consequently, she was entitled to present her claim to the County, which she did on March 11, 2020, "under the late discovery rule." (See TAC ¶ 37-38.)  Additionally, plaintiffs allege, the County "delayed the disclosure [of the autopsy reports] to conceal and obstruct the discovery of evidence" and "failed to timely inform[ ] . . . Ramirez of the circumstances of the death so that [she] could not file [a] timely and valid notice of claim[ ] with specific acts of negligence," which failures, plaintiffs assert, "estop[ ]" the County from relying on Ramirez's "lack of timeliness."  (See TAC ¶ 39.)

In seeking dismissal of Ramirez's wrongful death claim, County Defendants argue that, "to the extent plaintiff Ramirez claims that the [presentation of her] claim was timely as a result of delayed discovery," she fails to plead sufficient facts to support a finding that she acted with the requisite diligence and, consequently, fails to show such exception to the statute of limitations applies.  (See Defs.' Mot. at 6:27-7:4.)  Even assuming, arguendo, plaintiff's "delayed discovery" allegations are insufficient, however, County Defendants have not addressed in any manner plaintiffs' allegations pertaining to equitable estoppel, and, in particular, have not argued they are insufficient.  See John R. v. Oakland Unified School District, 48 Cal. 3d 438, 444 n.4 (1989) (observing "delayed discovery" and "equitable estoppel" are different "doctrine[s]" and are not "equivalents").[6]

Accordingly, County Defendants have not shown Count 1 in the First Cause of Action, to the extent brought on behalf of Ramirez, is subject to dismissal.

### b.  Freeman

The Court, in its September 15 Order, found that Freeman, unlike Ramirez, had

---

[6] In their opposition, plaintiffs rely exclusively on their equitable estoppel allegations, and County Defendants, in their reply, did not respond to such argument.

United States District Court
Northern District of California

United States District Court
Northern District of California

timely submitted a claim to the County.  The Court further found, however, that Freeman

was required, under California law, to file a lawsuit no later than six months after the date

on which the County gave him notice of its denial of his claim, and that Freeman filed the

instant action thirteen days after the expiration of such six-month period.  (See

September 15 Order at 6:4-7:9.)[7]

In the TAC, plaintiffs have not added any allegations pertaining to Freeman's filing

of the initial complaint, and, in particular, have not alleged any facts to support an

exception to the statute of limitations.

Accordingly, to the extent Count 1 in the First Cause of Action is brought on behalf

of Freeman, the claim is subject to dismissal.

**2.  Count 2**

In Count 2, asserted on behalf of Ramirez against the County, Mizel, and various

Doe defendants who are alleged to be employees of DCFS, plaintiffs allege said

defendants are liable for D.R.'s death for the reason that they failed to place D.R. "in the

most appropriate home environment" (see TAC ¶ 171.a), failed to "give preferential

consideration" to placing D.R. with relatives (see TAC ¶ 171.b; see also TAC ¶ 171.c),

failed to provide "notice and other assistance" to D.R.'s relatives (see TAC ¶ 172; see

also TAC ¶ 171.d), and failed to "establish, implement and follow procedures to ensure

the health, safety, and well-being of . . .  D.R." (see TFAC ¶ 173).  Additionally, plaintiffs

allege, the County is "vicariously liable for the negligence of Franich committed during the

scope of her contract as a foster parent."  (See TAC ¶ 177.)

County Defendants argue that Count 2, which, as noted, is asserted only on behalf

of Ramirez, is barred by the statute of limitations.  As with Count 1, however, County

---

[7] The Court additionally found that, although Freeman, after the denial of his claim, submitted, on two occasions, an amended claim to include additional details about D.R.'s death, and that he filed the instant action within six months after the County notified him of the denials of his amended claims, Freeman's submission of amended claims did not, as a matter of California law, extend the applicable six-month statute of limitations.  (See id. at 6:24-7:7.)

1  Defendants have not argued, let alone shown, the equitable estoppel allegations made

2  on behalf of Ramirez are insufficient,

3       Accordingly, County Defendants have not shown Count 2 in the First Cause of

4  Action is subject to dismissal.

5  **B.  Second Cause of Action**

6       The Second Cause of Action, titled "Negligence and Negligence Per Se –

7  Usurpation of Infant's Remains, Negligent Infliction of Emotional Distress," is brought by

8  Ramirez and D.R. against Mizel, and various Doe defendants who are alleged to be

9  employees of DCFS.  In support of such claim, plaintiffs allege that Mizel obtained D.R.'s

10 remains from a crematory by falsely claiming to be D.R.'s "next of kin" (see TAC ¶ 179),

11 thus "prevent[ing] the grieving parents and other relatives from making fundamental

12 decisions on the arrangements for their daughter's funeral and disposition of her remains"

13 (see TAC ¶ 182), and, in addition, that Mizel "did not allow the parents an opportunity to

14 have a second autopsy to determine the actual cause of death" (see TAC ¶ 183).

15      **1.  Ramirez**

16      County Defendants argue that the Second Cause of Action, to the extent asserted

17 on behalf of Ramirez, is untimely, relying on the same argument made in seeking

18 dismissal of the First Cause of Action.  For the reasons stated above with respect to the

19 First Cause of Action, County Defendants have not shown the Second Cause of Action,

20 to the extent asserted on behalf of Ramirez, is untimely.

21      **2.  D.R.**

22      In its September 15 Order, the Court found the Second Cause of Action, as

23 asserted in the FAC on behalf of D.R., was subject to dismissal as barred by the

24 applicable statute of limitations.  (See September 15 Order at 5:2-13, 6:4-7:7, 8:3-10.)

25 Plaintiffs have not, however, added any facts to support an exception to the statute of

26 limitations.

27      Consequently, the findings made by the Court in its prior order, namely, that a

28 lawsuit against a state agency and its employees must be filed no later than six months

United States District Court
Northern District of California

United States District Court
Northern District of California

1  from the date the agency gives notice it has denied a claim, and that the instant lawsuit

2  was filed more than six months after the date on which the County gave such notice (see

3  id. at 6:4-7:7, 8:3-10), apply to the instant claim as well.

4      Accordingly, the Second Cause of Action, to the extent it is brought on behalf of

5  D.R., is subject to dismissal.

6  **C. Third Cause of Action**

7      The Third Cause of Action is brought pursuant to 42 U.S.C. § 1983, and comprises

8  four "Counts," which Counts the Court considers in turn.

9      **1. Count 1: "Judicial Deception and Concealment of Evidence"**

10     Count 1, asserted on behalf of all plaintiffs against Mizel and Doe defendants who

11  are alleged to be DCFS employees, is based on three theories, which the Court next

12  considers in turn.

13          **a. "Obstruction of Paternity Claim"**

14     Plaintiffs first allege that Mizel and the Doe defendants "obstruct[ed]" Freeman's

15  paternity claim (see TAC at 27:2) by withholding information from the state court.

16  Specifically, plaintiffs allege, Mizel and the Doe defendants failed to advise the state court

17  that "Freeman stepped forward immediately and as soon as practicable to assert his

18  parental rights and responsibilities."  (See TAC ¶ 196.)  According to plaintiffs, such

19  omission deprived him of custody of D.R., in that the state court, not having been so

20  advised, found "Freeman did not step up soon enough[,] so she would not grant him

21  status as the presumed father."  (See TAC at 27 n.6.)

22     A plaintiff may base a § 1983 claim on a theory that the defendant engaged in

23  "deliberate fabrication" of evidence, where such act caused the plaintiff to suffer a

24  "deprivation of liberty," see Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017), such as

25  a parent's losing custody of a child, see, e.g., Hardwick v. County of Orange, 844 F.3d

26  1112, 1116-17 (9th Cir. 2017) (recognizing, as to "dependency court proceeding," due

27  process right to be free from "deliberate government use of perjured testimony and

28  fabricated evidence . . . designed to rupture [the plaintiff's] familial relationship").

1    In its September 15 Order, the Court found such claim, as asserted in the FAC,

2    subject to dismissal.  (See September 15 Order at 9:4-10:8.)  In the TAC, plaintiffs have

3    not added any factual allegations to their obstruction of paternity claim.  Consequently,

4    the findings previously made by the Court, which the Court next repeats herein with

5    limited modification, are applicable to this re-alleged claim.

6    Plaintiffs' theory appears to be that the state court determined Freeman was not

7    the presumed father at least partly because DCFS employees had concealed facts from

8    the state court that would have supported a finding that he was, in fact, the presumed

9    father.[8]  Plaintiffs fail to allege, however, that any DCFS employee was aware of, and

10    withheld from the state court, any fact potentially relevant to the determination of

11    Freeman's status.  In particular, a failure by DCFS employees to advise the state court

12    that Freeman, prior to the hearing conducted June 28, 2018, had told DCFS he was

13    "assert[ing] his parental rights" (see TAC ¶ 196) could not have deprived Freeman of a

14    liberty interest, as such assertion, without more, would not support a finding by the state

15    court that Freeman was D.R.'s presumed father.  Rather, under state law, a person can

16    be found to be a "presumed parent" only under certain specified circumstances, see Cal.

17    Fam. Code § 7611,[9] none of which are alleged in the TAC, let alone that any DCFS

18    employee was aware of any such circumstance.

19    Accordingly, to the extent Count 1 in the Third Cause of Action is based on a claim

20

21    _____

22    [8] "There are three types of fathers in juvenile dependency law: presumed,
biological, and alleged."  In re P.A., 198 Cal. App. 4th 974, 979 (2011).  "Presumed father
status ranks highest," as "[o]nly a statutorily presumed father is entitled to . . . custody."

23    See id. (internal quotation and citation omitted).

24    [9] Most of the circumstances pertain to the time at which such individual married, or
attempted to marry, the natural mother.  See Cal. Fam. Code § 7540(a); Cal. Fam. Code

25    § 7611(a)-(c).  The only other circumstances under which presumed parenthood may be
found are where (1) such individual and the natural mother both sign a "voluntary

26    declaration of paternity," see Cal. Fam. Code § 7571(a); see also Cal. Fam. Code
§§ 7571(d)- (f), (j)-(k); (2) such individual "receives the child into their home and openly

27    holds out the child as their natural child, see Cal. Fam. Code § 7611(d); and (3) "the child
is in utero after the death of [such individual]" and a number of additional conditions are

28    met, see Cal. Fam. Code § 7611(e).

that Mizel or other County employees concealed from the state court Freeman's having

asserted his parental rights to them, Count 1 is subject to dismissal.

### b.  "Obstruction of Familial Relationship"

Plaintiffs next allege that Mizel and the Doe defendants "obstruct[ed]" plaintiffs'

"familial relationship" (see TAC at 27:2) by "conceal[ing] from the [state] [c]ourt that

"many maternal and paternal relatives [of D.R.], including a pediatric nurse, were ready,

willing, and able to take care of D.R." (see TAC ¶ 203).

As County Defendants point out, however, plaintiffs also allege that "Freeman and

other relatives," including the above-referenced pediatric nurse, were present at the

"detention" hearing, at which time they "indicated that they [were] willing, able, and ready

to take in D.R."  (See TAC ¶ 72.)[10]  Consequently, as the state court was aware of their

willingness to accept custody, the state court's determination that none of those relatives

would be granted custody could not have been based on a failure by DCFS employees to

so advise the state court.

Accordingly, to the extent Count 1 in the Third Cause of Action is based on a claim

that Mizel and/or other DCFS employees concealed from the state court D.R.'s relatives'

willingness to take custody of D.R., Count 1 is subject to dismissal.

### c.  "Cover Up of a Suspicious Death"

As noted, plaintiffs allege that, after D.R. died, Mizel had D.R. cremated, and that

the coroner's report was not provided to Freeman until several months after it was

written.  Plaintiffs allege those actions were taken pursuant to a "conspir[acy]" between

Mizel and other DCFS employees to "cover up" a "suspicious death."  (See TAC ¶ 208;

see also TAC at 29:11.)  In particular, according to plaintiffs, Mizel had D.R. cremated "to

_____

[10] The Court also notes that, in connection with a separate motion filed in the above-titled action, defendant Brian Stern has submitted the state court's "Findings and Orders After Detention Hearing," which filing reflects that Freeman, the MGM, and a number of other relatives were present at the hearing.  Additionally, attached thereto is a "Detention Report" authored by Mizel, in which she advised the state court that the MGM "want[ed] the baby" and that Ramirez "want[ed] Maternal grandmother to care for the newborn child."  (See Req. for Judicial Notice, filed February 10, 2022, Ex. A.)

United States District Court
Northern District of California

1  prevent an independent autopsy" (see TAC ¶ 208(a)) and delayed the release of the

2  coroner's report in an attempt to "run[ ] out the clock on the six months plaintiffs had to

3  file a Notice of Claims against the County" (see TAC ¶ 208(b)).

4       In its September 15 Order, the Court dismissed the claim, as alleged in the FAC.

5  (See September 15 Order at 11:15-12:15.)  Specifically, the Court acknowledged that

6  "allegations supporting a finding that a defendant engaged in a 'cover-up of

7  [constitutional] violations' may 'state a federally cognizable claim" where the defendant's

8  actions "'can be causally connected to a failure to succeed in [a] lawsuit,'" but also noted

9  that such a claim "is subject to dismissal without prejudice where the 'ultimate resolution

10  of [a pending] suit remains in doubt.'"  (See id. at 11:28-12:5 (quoting Karim-Panahi v.

11  Los Angeles Police Dep't, 839 F.2d 621, 625 (9th Cir. 1988) (alterations in September 15

12  Order).)  As plaintiffs did not, in the FAC, identify a claim on which any plaintiff failed to

13  succeed as a result of the alleged conspiracy, the Court found the claim was "'not ripe for

14  judicial consideration.'"  (See id. at 12:7-12 (quoting Karim-Panahi, 839 F.2d at 625).)

15       In the TAC, plaintiffs again fail to identify a claim on which any plaintiff has failed to

16  succeed as a result of the alleged conspiracy.

17       Accordingly, to the extent Count 1 in the Third Cause of Action is based on a

18  claim that County employees conspired to cover up details of D.R.'s death, Count 1 is

19  subject to dismissal.

20       **2. Count 2:  "Seizure Without a Warrant and Interference with Familial**

21  **Relationship"**

22       Count 2, brought on behalf of all plaintiffs against Doe defendants described by

23  plaintiffs as "DCFS social workers, whose identities are not currently known, who took

24  D.R. from the hospital," is based on the allegation that the Doe defendants seized D.R.

25  without a warrant or exigent circumstances, in violation of D.R.'s Fourth Amendment

26  rights and in violation of Ramirez and Freeman's Fourteenth Amendment rights.  (See

27  TAC ¶¶ 211-13.)  Additionally, Count 2 is based on the allegation that the Doe

28  defendants denied Ramirez and Freeman their "rights under [the] 14th Amendment to

United States District Court
Northern District of California

United States District Court
Northern District of California

1   have the cause of the death determined, to have a say in the disposal of the body[,] and

2   to conduct a funeral for their child."  (See TAC ¶ 222.)

3               **a.  Seizure of D.R. Without Warrant**

4                   **(1) D.R.**

5           A child has a Fourth Amendment right not be removed from a home without a

6   warrant unless the removing officer has "reasonable cause to believe that the child is

7   likely to experience serious bodily harm in the time that would be required to obtain a

8   warrant."  See Rogers v. County of San Joaquin, 487 F.3d 1288, 1294 (9th Cir. 2007).

9           County Defendants argue D.R.'s Fourth Amendment claim fails for the asserted

10  reason that "there are no damages recoverable" by her estate.  (See Defs.' Mot. at

11  13:20.)[11]  In support of such argument, County Defendants rely on California Code of

12  Civil Procedure § 337.34(a), which provides that "[i]n an action or proceeding by a

13  decedent's personal representative or successor in interest on the decedent's cause of

14  action, the damages recoverable are limited to the loss or damage that the decedent

15  sustained or incurred before death, including any penalties or punitive or exemplary

16  damages that the decedent would have been entitled to recover had the decedent lived,

17  and do not include damages for pain, suffering, or disfigurement."  See Cal. Civ. Proc.

18  Code § 337.34(a).  Said statute, County Defendants argue and plaintiffs have not

19  disputed, is applicable to the instant claim.

20          Focusing on the above-quoted preclusion of recovery for noneconomic damages,

21  and in light of the absence of any allegation that D.R. incurred any economic loss as a

22  result of the seizure, County Defendants argue the claim should be dismissed on the

23  ground that no recovery is possible.  A plaintiff bringing a claim under § 1983, however, is

24  entitled to recover nominal damages.  See George v. City of Long Beach, 973 F.2d 706,

25  708 (9th Cir. 1992) (holding "nominal damages must be awarded if a plaintiff proves a

26

27          _____

        [11] County Defendants also argue "the seizure was justified" (see Defs.' Mot. at

28  13:2-5); such argument is, however, premature at the pleading stage.

violation of his constitutional rights . . . whether or not the constitutional violation causes any harm").

Accordingly, to the extent Count 2 in the Third Cause of Action is based on a claim by D.R. that the Doe defendants improperly seized her without a warrant, County Defendants have not shown Count 2 is subject to dismissal.

### (2) Freeman

"The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." Mabe v. San Bernardino County, 237 F.3d 1101, 1107 (9th Cir. 2001). Consequently, "[g]overnment officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." See id. at 1106 (internal quotation and citation omitted).

County Defendants argue Freeman cannot bring a claim based on the seizure for the reason that, at the time of the seizure, he had no legal rights to D.R. with which the Doe defendants could have interfered. The Court agrees.

A parent has a liberty interest in "the companionship, care, custody, and management of their children." See Brittain v. Hansen, 415 F.3d 982, 992 (9th Cir. 2006). As the Ninth Circuit has explained, however, such liberty interest is held only by a parent who has "legal custody" of a child or, at a minimum, "visitation rights." See id. Here, Freeman does not allege he had custody of D.R. or visitation rights on the date of the seizure,[12] or, for that matter, at any time, and, consequently, has failed to allege facts to show he had a liberty interest.

---

[12] In its September 15 Order, the Court found Freeman, at the time of the seizure, was, at best, an "'alleged biological father,'" and that, under California law, an individual with such status "'does not have a current interest in a child.'" (See September 15 Order at 13:16-22 (quoting In re Christopher M., 113 Cal. App. 4th 155, 159 (2003).).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Accordingly, to the extent Count 2 in the Third Cause of Action is based on a claim

2    by Freeman that the Doe defendants improperly seized D.R. without a warrant, Count 2

3    is subject to dismissal.

### (3) Ramirez

4

5    County Defendants, relying on plaintiffs' allegation that, prior to the seizure,

6    Ramirez "left the hospital and left D.R. in the care and custody of the MGM" (see TAC

7    ¶ 8), argue that, as to Ramirez, "there was no liberty interest implicated" by the alleged

8    warrantless seizure (see Defs.' Mot. at 12:19-20).  Nothing in the TAC, however, supports

9    a finding that, at the time of the seizure, Ramirez had lost custody of D.R., and, indeed,

10   the TAC includes a specific allegation that "[h]er parental rights" were never terminated.

11   (See TAC ¶ 47.)  Consequently, although Ramirez's decision to leave D.R. in the care of

12   another may bear on the strength of Ramirez's claim, such decision is not a bar to the

13   claim.

14   Accordingly, to the extent Count 2 in the Third Cause of Action is based on a claim

15   by Ramirez that the Doe defendants improperly seized D.R. without a warrant, County

16   Defendants have not shown Count 2 is subject to dismissal.

### b.  Events After D.R.'s Death

17

18   As noted, Count 2 is also based on the theory that the Doe defendants denied

19   Freeman and Ramirez the ability to have the cause of death determined, to have a say in

20   the disposal of D.R.'s remains, and to conduct a funeral.  Plaintiffs allege such acts and

21   omissions interfered with Freeman and Ramirez's "familial relationship" with D.R. (see

22   TAC ¶ 222; see also TAC at 30:9), i.e., their asserted right to the "companionship, care,

23   custody, and management" of D.R.  See Brittain, 451 F.3d at 992.

24   In its September 15 Order, the Court dismissed the claim, as alleged in the FAC,

25   for the reason that plaintiffs failed to plead facts to support a finding that any Doe

26   defendant engaged in the conduct alleged or had conspired with Mizel, who, plaintiffs

27   asserted was the individual who had D.R.'s remains cremated, the act that allegedly

28   caused the post-death deprivations.  (See Order, filed September 15, 2020, at 14:3-19.)

1   In the TAC, plaintiffs have added allegations that "Mizel did not decide to have the

2   body cremated on her own" and that she "must have . . . consulted and obtained

3   authorization from her supervising social workers" (see TAC ¶ 125), thus, apparently,

4   identifying the Doe defendants, at least in this instance, as Mizel's supervisors.

5   In their motion, County Defendants do not argue plaintiffs' additional allegations

6   are insufficient to allege misconduct on the part of the Mizel's unnamed supervisors.

7   Rather, County Defendants repeat their argument that Ramirez and Freeman did not

8   have a liberty interest in a relationship with D.R.

9   For the reasons stated above, the Court finds Freeman did not have such a liberty

10   interest, and that County Defendants have not shown Ramirez lacked such a liberty

11   interest.

12   Accordingly, to the extent Count 2 in the Third Cause of Action is based on an

13   allegation that Mizel's unnamed supervisors authorized Mizel to cremate D.R.'s body,

14   Count 2 is subject to dismissal as asserted on behalf of Freeman but not as asserted on

15   behalf of Ramirez.

16   **3.  Count 3: "Failure to Protect"**

17   Count 3, brought on behalf of D.R. against Mizel and the Doe defendants is based

18   on the theory that said defendants "put[ ] D.R. in an unsafe environment" (see TAC

19   ¶ 228), and, in addition, that Mizel and the Doe defendants did not engage in a "thorough

20   and complete investigation into the actual causes of [D.R.'s] death" (see TAC ¶ 236).

21   **a.  Placement In Unsafe Environment**

22   To the extent the claim is based on a theory that Mizel and any Doe defendant put

23   D.R. in an unsafe environment, County Defendants argue the FAC does not include

24   sufficient facts to support a claim.  The Court agrees.

25   Children found to be dependents of a court hold "protected liberty interests in

26   being shielded from harm inflicted by a foster parent," see Tamas v. Department of Social

27   & Health Services, 630 F.3d 833, 842 (9th Cir. 2010), and are deprived of said liberty

28   interests if social workers "act with such deliberate indifference [thereto] that their actions

United States District Court
Northern District of California

United States District Court
Northern District of California

1   shock the conscience," see id. at 844 (internal quotation and citation omitted).  For a

2   state actor to "act with deliberate indifference, he must recognize the unreasonable risk

3   and actually intend to expose the plaintiff to such risks without regard to the

4   consequences to the plaintiff"; stated otherwise, he "needs to know that something is

5   going to happen but ignore the risk and expose the plaintiff to it."  See Herrera v. Los

6   Angeles Unified Sch. Dist., 18 F.4th 1156, 1158-59 (9th Cir. 2021) (internal quotations,

7   alterations, and citation omitted).

8       In its September 15 Order, the Court, in dismissing the claim as alleged in the

9   FAC, found as follows:

10      Here, as County Defendants correctly observe, the FAC includes
    insufficient facts to support a finding that Mizel, or any other County
11      employee, acted with deliberate indifference to D.R.'s safety, either at the
    time D.R. was placed with Franich or during the approximately three
12      months in which she was in Franich's care.  Rather, the facts alleged
    support, at best, a finding of negligence. (See, e.g., FAC ¶ 88 (alleging
13      unnamed DCFS employees "failed to ensure" Franich had "sufficient
    knowledge and skills to take care of an infant, such as knowledge of safe
14      sleeping practice[s] and how to administer CPR to an infant"); FAC ¶ 90
    (alleging Mizel "failed to supervise and monitor [ ] Franich").)  Negligence,
15      even if "gross," is, however, insufficient to support a deliberate indifference
    claim.  See L.W. v. Grubbs, 92 F.3d 894, 899 (9th Cir. 1996) (holding,
16      where plaintiff alleged defendant was deliberately indifferent to her safety
    needs, "tortious conduct, when proved, may well result in some state law
17      remedy, but gross negligence, in and of itself, is not unconstitutional").

18   (See September 15 Order at 15:6-18.)

19      In the TAC, plaintiffs have added allegations that Mizel knew "the DockATot,

20   because of its construction, is fatally dangerous if D.R. was swaddled and put in it

21   unsupervised because if D.R. turned over she could [be] suffocated" (see TAC ¶ 170; see

22   also TAC ¶ 225), and that Mizel "knew one month before the death that the infant D.R.

23   had managed to roll over on her stomach on her own and that she was often swaddled

24   tightly" (see TAC ¶ 232.)  Although these additional factual allegations, like those in the

25   FAC, may support a finding of negligence, they are insufficient to support a finding that

26   Mizel or any Doe defendant "actually intended," by placing D.R. with Franich and/or by

27   not removing D.R. from Franich's care, to expose D.R. to the risk of asphyxiation.  See

28   Herrera, 18 F.4th at 116-61.

17

1   Accordingly, to the extent Count 3 in the Third Cause of Action is based on a claim

2   that County employees deprived D.R. of a liberty interest when they placed D.R. with

3   Franich and/or did not remove D.R. from Franich's care, Count 3 is subject to dismissal.

4               **b. Failure to Investigate Cause of Death**

5   As noted, Count 3 is also based on the theory that Mizel and Doe employees of

6   DCFS did not conduct a sufficient investigation into the cause of D.R.'s death.  In

7   particular, plaintiffs allege, Mizel and the Doe defendants "ignored suspicious injuries to

8   the back of [D.R.'s] head, the internal bleeding, and the bruising of internal organs."  (See

9   TAC ¶ 236.)

10   In its September 15 Order, the Court dismissed the claim as alleged in the FAC.

11   (See Order, filed September 15, 2020, at 16:1-8.)  Specifically, although the Court

12   observed the claim "appear[ed] to be that the lack of such investigation was part of an

13   alleged conspiracy to cover up the cause of death in an effort to hinder the filing of the

14   instant lawsuit," the claim was "not ripe at this time" (see id. at 16:1-5), in that plaintiffs

15   had not alleged there was a claim on which D.R. failed to succeed as a result of the

16   alleged conspiracy.

17   In the TAC, plaintiffs, again, fail to identify any claim on which D.R. has failed to

18   succeed as a result of the alleged conspiracy.

19   Accordingly, to the extent Count 3 in the Third Cause of Action is based on a claim

20   that Mizel and the Doe defendants conducted an insufficient investigation into the cause

21   of death, Count 3 is subject to dismissal.

22   **4.  Count 4:  "Violation of Right Under the Due Process Clause Under the**

23   **Fourteenth Amendment [–] Obstruction of Relative Placement"**

24   Count 4, brought on behalf of D.R. and asserted against Mizel and Doe employees

25   of DCFS, is based on the allegation that said defendants "did not take any steps to locate

26   and notice relatives of the dependency process and did not provide any of the relative[s]

27   any information and assistance for placement of D.R. in their home."  (See TAC ¶ 241.)

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

1   County Defendants argue the Court lacks subject matter jurisdiction over Count

2   4.[13]

3   First, County Defendants rely on the domestic relations exception to federal

4   jurisdiction, under which "federal district courts lack jurisdiction over claims regarding

5   child custody issues." See Safapou v. Marin County, 2018 WL 4381552, at *5 (N.D. Cal.

6   January 23, 2018).  That "exception," however, "only encompasses cases involving the

7   issuance of a divorce, alimony, or child custody decree," specifically, cases in which

8   plaintiffs "request the District Court to issue a divorce, alimony, or child custody decree."

9   See Ankenbrandt v. Richards, 504 U.S. 689, 704, 706-07 (1992); see, e.g., Safapou,

10  2018 WL 4381552, at *2, *5 (finding, under domestic relations exception, no jurisdiction

11  to consider plaintiff's claim "for order awarding [p]laintiff custody of her son").  Here,

12  however, plaintiffs, on behalf of D.R., do not seek issuance of a custody decree, and,

13  consequently, the "domestic relations exception" does not bar jurisdiction over Count 4.

14  Next, citing the "Rooker-Feldman" doctrine, County Defendants argue the Court

15  lacks jurisdiction over Count 4.  See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923);

16  District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  Under the

17  Rooker-Feldman doctrine, "federal district courts lack jurisdiction to review the final

18  determinations of a state court in judicial proceedings," including where "the challenge to

19  the state court decision involves federal constitutional issues." See Doe & Associates

20  Law Offices v. Napolitano, 252 F.3d 1026, 1029 (9th Cir. 2001).  Here, however, Count 4

21  does not seek review of the state court's decision to place D.R. with someone other than

22  relatives.  Rather, the claim is based on the theory that County Defendants failed to

23  assist D.R.'s relatives in their attempt to convince the state court to place D.R. with them.

24  (See, e.g., TAC ¶ 80 (alleging "DCFS is required to provide information to relatives on

25  how to apply for placement").)

26

27  [13] County Defendants have not argued that, assuming jurisdiction exists, Count 4
    fails to state a cognizable claim; consequently, the Court does not consider herein the
28  merits of Count 4.

1    Accordingly, County Defendants have not shown Count 4 in the Third Cause of

2   Action is subject to dismissal.

3   **D.  Fourth Cause of Action**

4    The Fourth Cause of Action, brought pursuant to § 1983 and titled "Monell

5   Claims," is based on the theory that the County is liable for the alleged constitutional

6   violations on which the Third Cause of Action, with the exception of Count 4, is based.  In

7   other words, plaintiffs seek to hold the County liable for the acts on which Counts 1, 2,

8   and 3 in the Third Cause of Action are based.

9    A local government entity may be sued under § 1983 where an allegedly

10   unconstitutional act "implements or executes" a municipal policy or custom.  See Monell

11   v. Department of Social Services, 436 U.S. 658, 690 (1978).

12    As discussed above, the Court has found all but two of the claims asserted in the

13   Third Cause of Action are subject to dismissal.  As to such insufficiently pleaded claims, a

14   Monell claim against the County necessarily fails.  See Villegas v. Gilroy Garlic Festival

15   Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (holding "[b]ecause there is no constitutional

16   violation, there can be no municipal liability").

17    The sole claims in the Third Cause of Action not subject to dismissal are portions

18   of Count 2 in the Third Cause of Action, specifically, D.R. and Ramirez's claim based on

19   the warrantless seizure, and Ramirez's claim based on Mizel's unnamed supervisors'

20   authorizing Mizel to cremate D.R.'s body.

21    In dismissing the Fourth Cause of Action, as alleged in the FAC, the Court found

22   plaintiffs failed to provide sufficient notice of the basis for the claim, as plaintiffs did no

23   more than identify the factual allegations on which their Third Cause of Action was based

24   and then alleged, as a conclusion, the existence of a municipal policy to engage in such

25   activity.

26    With regard to the seizure, plaintiffs have not added in the TAC any allegations

27   sufficient to plead a municipal policy or practice under which DCFS employees were

28   acting when they seized D.R. without a warrant.  Rather, as in the FAC, plaintiffs again

20

1   identify the factual allegations describing that seizure, and then allege as a conclusion

2   that a municipal policy to engage in such activity exists.  (Compare FAC ¶¶ 204.b, 204.c,

3   204.g. with TAC ¶¶ 259.a, 259.b, 259.f.)

4           Lastly, as to the authorized cremation of D.R.'s body, the TAC includes no

5   allegations, conclusory or factual, that could support a finding that any such authorization

6   was given to Mizel pursuant to a municipal policy or custom.

7           Accordingly, the Fourth Cause of Action is subject to dismissal.

**CONCLUSION**

9           For the reasons stated above, County Defendants' motion to dismiss is hereby

10  GRANTED in part and DENIED in part, as follows:

11          1. Count 1 in the First Cause of Action is hereby DISMISSED to the extent it is

12  asserted on behalf of Freeman.[14]

13          2.  The Second Cause of Action is hereby DISMISSED to the extent it is asserted

14  on behalf of D.R.

15          3.  Count 1 in the Third Cause of Action is hereby DISMISSED.

16          4.  Count 2 in the Third Cause of Action is hereby DISMISSED to the extent it is

17  brought on behalf of Freeman.

18          5.  Count 3 in the Third Cause of Action is hereby DISMISSED.

19          6.  The Fourth Cause of Action is hereby DISMISSED.

20          7.  In all other respects, the motion is DENIED.

21          **IT IS SO ORDERED.**

23  Dated: March 4, 2022

MAXINE M. CHESNEY
United States District Judge

_____

[14] As noted, this finding does not apply to defendant Franich.

21