IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. R., et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>CONTRA COSTA COUNTY CA, et al.,<br><br>               Defendants. | Case No. 19-cv-07152-MMC<br><br>**ORDER GRANTING IN PART COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING IN PART THIRD CAUSE OF ACTION WITHOUT FURTHER LEAVE TO AMEND** |

Before the Court is the "Motion for Summary Judgment or, in the Alternative, Summary Adjudication," filed January 26, 2024, on behalf of defendants Contra Costa County ("County") and Tasha Mizel ("Mizel") (hereinafter, "County Defendants"). Plaintiffs D.R., who is deceased and appears through her successor in interest John Freeman ("Freeman"), and Cristina Ramirez ("Ramirez") have filed opposition, to which County Defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

The instant action proceeds on the Third Amended Complaint ("TAC"), wherein plaintiffs assert claims arising out of the detention of D.R. by the County's Children & Family Services ("CFS"), the child's subsequent death while in the custody of Marcie Franich ("Franich"), a foster parent, and actions taken by County employees after the death. The defendants named in the TAC are the County, Mizel, Franich, and various County employees identified as "Doe" defendants.

---

[1] By order filed March 18, 2024, the Court took the matter under submission.

1   By order filed March 4, 2022, the Court, in granting in part County Defendants'

2   motion to dismiss the TAC, dismissed all of Freeman's claims against County Defendants

3   and some of D.R.'s and Ramirez's claims against County Defendants, and, by order filed

4   September 13, 2023, the Court, in approving a stipulation between plaintiffs and Franich,

5   dismissed all claims asserted against Franich.  By the instant motion, County Defendants

6   seek summary judgment on the remaining claims.

7   **LEGAL STANDARD**

8   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant

9   summary judgment if the movant shows that there is no genuine issue as to any material

10   fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P.

11   56(a).

12   The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317

13   (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric

14   Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking

15   summary judgment show the absence of a genuine issue of material fact.  Once the

16   moving party has done so, the nonmoving party must "go beyond the pleadings and by

17   [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on

18   file, designate specific facts showing that there is a genuine issue for trial."  See Celotex,

19   477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has

20   carried its burden under Rule 56[ ], its opponent must do more than simply show that

21   there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.

22   "If the [opposing party's] evidence is merely colorable, or is not significantly probative,

23   summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations

24   omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed

25   in the light most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at

26   587 (internal quotation and citation omitted).

27   //

28   //

United States District Court
Northern District of California

**DISCUSSION**

The Court considers the remaining claims in the order those claims are asserted in the TAC.

**A.  First Cause of Action**

The First Cause of Action, titled "Wrongful Death and Survivor Action," asserts state law claims on behalf of Ramirez and alleges the following:  (1) employees of the County's "Coroner Office," who are identified as Does, failed to "take into consideration . . . suspicious circumstances" allegedly occurring at the time of D.R.'s death, failed to "diligently investigate" the death, did not "follow all required protocols under law for the autopsy," and, in the autopsy report, "misstated the facts and circumstances of the death" (see TAC ¶¶ 157-158); (2) Mizel, who is a social worker, and other social workers, identified as Does, "breached their duty of reasonable care of D.R." and failed to comply with "several mandatory statutory duties" required of social workers (see TAC ¶ 171), in that Mizel and the Does failed to properly supervise Franich and did not provide assistance to "relatives" so that D.R. could have been placed with relatives rather than an unrelated foster parent (see also TAC ¶¶ 161, 163, 166-170, 172-173); and (3) the County is "vicariously liable for the torts of its social workers" (see TAC ¶ 176) and "for the negligence by Franich committed during the scope of her contract as a foster parent" (see TAC ¶ 177).

County Defendants argue that the First Cause of Action is barred for the reason that Ramirez did not present a government claim to the County until after the instant action had been filed.

Under the Government Claims Act, a plaintiff must present a claim for damages to a public entity prior to filing suit against either the entity, see Cal. Gov. Code § 945.4, or an employee of the entity, see Cal. Gov. Code § 950.2.[2]  "Timely claim presentation is not

---

[2] This requirement is subject to exceptions, such as claims for tax returns or for wages, none of which is applicable to Ramirez's state law claims.  See Cal. Gov. Code § 905.

1    merely a procedural requirement," but, rather, is "a condition precedent to [the] plaintiff's

2    maintaining an action against [the] defendant." See Lowry v. Port San Luis Harbor Dist.,

3    56 Cal. App. 5th 211, 219 (2020) (internal quotation and citation omitted).

4        The purpose of the claim presentation requirement "is to provide the public entity

5    sufficient information to enable it to adequately investigate claims and to settle them, if

6    appropriate, without the expense of litigation." See City of San Jose v. Superior Court, 12

7    Cal. 3d 447, 455 (1974).  Consequently, where a plaintiff files a lawsuit against a public

8    entity and/or its employees before satisfying the claim presentation requirement, the

9    lawsuit is subject to dismissal.  See Lowry, 56 Cal. App. 5th at 215 (holding requirements

10   of Government Claims Act "not satisfied by filing a complaint before rejection of a claim";

11   affirming judgment in favor of public entity where plaintiff filed civil action on same date

12   he presented government claim to entity rather than "waiting for the public entity to

13   respond to his [claim]"); Le Mere v. Los Angeles Unified Sch. Dist., 35 Cal. App. 5th 237,

14   247 (2019) (holding, where plaintiff presented claim to public entity only after she filed

15   lawsuit against entity, lawsuit was "barred"; rejecting argument plaintiff could "'cure' her

16   failure to file a prelawsuit claim by filing by a postlawsuit claim").

17       Here, plaintiffs, including Ramirez, filed their initial complaint on October 30, 2019,

18   and filed a First Amended Complaint ("FAC") as of right on February 17, 2020.  County

19   Defendants were served with a summons and the FAC, as well as the initial complaint,

20   on February 18, 2020.  (See Doc. No. 20.)  Thereafter, on March 11, 2020, Ramirez

21   presented a government claim to the County, asserting therein that the County was liable

22   for the actions of "Mizel and other unknown employees of [CFS] and the coroner's office"

23   (see County Defs.' Req. for Judicial Notice Ex. A [Doc. 156-1] at 5),[3] namely, the actions

24   _____

25       [3] County Defendants' unopposed motion for judicial notice of the contents and
     date of Ramirez's government claim, as well as the date and contents of the County's
26   resolution thereof, is hereby GRANTED.  See Varo v. Los Angeles County Dist.
     Attorney's Office, 473 F. Supp. 3d 1066, 1070 (C.D. Cal. 2019) (taking judicial notice of
27   contents of government claim).  In citing to said exhibit, as well as to all other exhibits
     offered by either party, the Court has used herein the page number affixed to the top of
28   each page by this district's electronic filing program.

and omissions on which Ramirez's state law claims, as set forth in the initial complaint

and FAC were based (compare id. at 5, 7-10 with Compl. ¶¶ 48-63, 75-123, 130-141,

143-148, and FAC ¶¶ 48-63, 75-133, 140-151, 155-161).)  The County denied the claim

on March 26, 2020.  (See County Defs.' Req. for Judicial Notice Ex. A at 3.)

In their opposition, plaintiffs do not disagree that a government claim must be

presented to and denied by the public entity prior to the filing of a lawsuit.  Rather,

plaintiffs argue County Defendants should be estopped from raising such defense.

"[T]he failure to file the required form, in the proper circumstances, may be

excused and the governmental agency estopped from urging strict compliance with the

statutory provisions [of the Government Claims Act]."  Fredrichsen v. City of Lakewood, 6

Cal. 3d 353, 357 (1971).  Specifically, "a public entity may be estopped from asserting the

limitations of the claims statute where its agents or employees have prevented or

deterred the filing of a timely claim by some affirmative act," see John R. v. Oakland

Unified Sch. Dist., 48 Cal.3d 438, 445 (1989), such as making "misleading statements

about the need for or advisability of a claim," or engaging in other conduct that "induces a

reasonably prudent person to avoid seeking legal advice or commencing litigation," see

J.P. v. Carlsbad Unified Sch. Dist., 232 Cal. App. 4th 323, 334 (2014) (internal quotation

and citation omitted).

Here, plaintiffs contend County Defendants should be estopped from relying on

Ramirez's failure to present a claim prior to filing the instant lawsuit, for the reason that

the coroner's office did not issue the Coroner's Report until April 2, 2019, i.e., more than

five months after D.R.'s death (see Pls.' Ex. 7 [Doc. 174-9] at 4-5),[4] that, thereafter, the

---

[4] The Coroner's Report includes a "Confidential Investigative Report" prepared by a county deputy sheriff, who sets forth the events that occurred on the date of D.R.'s death, specifically, that the foster mother, after feeding D.R. and "swadd[ling]" her "with a blanket," placed her in a bassinette on a "DockATot," that, approximately two and half hours later, the foster parent found D.R. "unresponsive" and "still swaddled in the blanket," but "face down on the 'DockATot,'" at which point the foster parent "removed [D.R.] from the bassinette," performed "CPR" and "called 911," and that fourteen minutes later D.R. arrived at a hospital where, shortly after arrival, she was pronounced dead. (See Pls.' Ex. 7 at 4-5.)

County did not provide her with the Coroner's Report at a hearing conducted in state court on May 22, 2019, at which hearing a representative of CFS advised the state court, as well as counsel for Ramirez and others present, that said Report had been issued (see Pls. Ex. 4 [Doc. 174-7] at 9), and that neither Mizel nor anyone else with CFS ever told Ramirez or her state court counsel "the circumstances surrounding the death (e.g., the use of the DockATot, D.R. was found face down after hours of being left alone unsupervised, etc.)" (see Mauck Decl. Ex. H [Doc. No. 157-8] at 9:18-22).

Even assuming Ramirez had no cause to present a claim to the County prior to learning the circumstances of the death that were included in the Coroner's Report, Ramirez fails to make any showing that Mizel and/or other County employee engaged in any conduct that prevented or deterred Mizel from presenting a claim to the County prior to the date on which the instant lawsuit was filed. It is readily apparent Ramirez was aware of those facts prior to the date the instant action was filed, as the circumstances of the death are alleged in the initial complaint. Indeed, Ramirez, in her claim form, acknowledged she learned "about the facts and circumstances of [D.R.'s] death stated in the [Coroner's] [R]eport," as well as other details about the death, prior to the date on which the instant action was filed. (See Defs.' Req. for Judicial Notice Ex. at 7.)[5] Ramirez provides no explanation as to why, as of the date she had the information she now asserts she needed to present a government claim, she chose to file a civil action rather than present a government claim.

Accordingly, in light of Ramirez's failure to present a claim to the County prior to the date on which the initial complaint was filed, County Defendants are entitled to summary judgment on the First Cause of Action, and the Doe Defendants likewise are

---

[5] In the claim form, Ramirez stated she obtained a copy of the Coroner's Report from Freeman's state court attorney, who had obtained it from CFS. (See id.) As set forth in the transcript of the state court hearing conducted on May 22, 2019, Freeman's counsel made a request that CFS provide him with a copy of the Coroner's Report and CFS agreed to do so. (See Pls.' Ex. 4 at 10.) Although state court counsel for Ramirez was present at that same hearing, said counsel did not ask for a copy. (See id.)

1   entitled to summary judgment on the First Cause of Action.  See Columbia Steel

2   Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 803 (9th Cir. 1995) (affirming grant

3   of summary judgment in favor of nonappearing defendant where plaintiff, in response to

4   summary judgment motion filed by appearing defendant, had "full and fair opportunity to

5   brief and present evidence" on dispositive issue applicable to both nonappearing and

6   appearing defendants).

7   **B.  Second Cause of Action**

8        The Second Cause of Action, titled "Negligence and Negligence Per Se –

9   Usurpation of Infant's Remains, Negligent Infliction of Emotional Distress," asserts state

10  law claims on behalf of Ramirez and alleges the following:  (1) Mizel, on November 8,

11  2018, i.e., twelve days after D.R.'s death, "signed a release as D.R.'s next of kin for Alta

12  Vista Cremation to obtain D.R.'s remains for cremation" and, in connection therewith, "did

13  not obtain consent from Ramirez for the cremation[ ] and did not inform Ramirez [of] the

14  circumstances of the death" (see TAC ¶¶ 179, 181); and (2) Mizel did so "under order of,

15  or in concert with others," identified as "Does," who are Mizel's "supervisor" and the

16  "Director" of CFS (see TAC ¶¶ 185-186).

17       County Defendants contend the Second Cause of Action, like the First Cause of

18  Action, is barred, because Ramirez did not present a government claim to the County

19  until after the instant action had been filed.  In their opposition, plaintiffs argue the

20  requirement that Ramirez present a government claim is inapplicable to the Second

21  Cause of Action, for the asserted reason that Mizel, in arranging for a cremation of the

22  remains without Ramirez's permission, "acted outside the scope of her employment."

23  (See Pls.' Opp. at 27:19.)

24       The presentation requirement applies to "a cause of action against a public

25  employee or former public employee for injury resulting from an act or omission in the

26  scope of his employment as a public employee."  See Cal. Gov't Code § 950.2.  Here, the

27  TAC, in which Mizel and the Does are named as defendants, expressly alleges that, "[a]t

28  all times mentioned herein, each of the above defendants except for Franich (who acted

United States District Court
Northern District of California

1   as their agent) was an officer, agent, or employee of the County of Contra Costa" and

2   "[e]ach acted under color of law within the course and scope of their respective duties in

3   doing the things and acts herein alleged." (See TAC ¶ 61.)  Consistent therewith,

4   Ramirez presented to the County a claim asserting the County was liable for Mizel's

5   alleged failure to "get authorization from Ramirez or her attorney for the cremation of the

6   remains of [D.R.]" and that Mizel was "under instruction from [CFS]" not to obtain such

7   authorization. (See County Defs.' Req. for Judicial Notice Ex. A at 9-10). Consequently,

8   as County Defendants point out, plaintiffs' argument in opposition to summary judgment

9   is contrary to the claim made on behalf of Ramirez in the instant action. Moreover,

10  plaintiffs have made no showing that, in discovery or otherwise, they provided notice of

11  their claim that Mizel was, in obtaining the remains for purposes of cremation, acting

12  outside the scope of her employment.

13          In any event, whether or not causing a cremation of a former dependent of the

14  court without permission of a parent is considered an act within or outside of a social

15  worker's scope of employment, plaintiffs offer no evidence that Mizel engaged in such

16  conduct. In particular, County Defendants have submitted evidence, undisputed by

17  plaintiffs, that Mizel, prior to arranging for the cremation, "contacted plaintiff Ramirez and

18  spoke with her personally" and that "she agreed to cremation." (See Mizel Decl. ¶ 20.)

19  In response, plaintiffs argue a triable issue of fact as to consent nonetheless exists,

20  relying on a declaration from Michelle Rezentes ("Rezentes"), Ramirez's mother, who

21  states therein: "If I had known about the circumstances of the death, Cristina [Ramirez]

22  and I would not have given any consent." (See Rezentes Decl. ¶ 16.) As County

23  Defendants point out, however, Rezentes' speculation as to what Ramirez may have

24  done had her mother been aware of those circumstances is inadmissible, and plaintiffs

25  offer no declaration from Ramirez herself.

26          Accordingly, in light of Ramirez's failure to present a claim to the County prior to

27  the date on which the initial complaint was filed and there being no dispute that Ramirez

28  provided consent to the cremation, County Defendants are entitled to summary judgment

United States District Court
Northern District of California

8

1   on the Second Cause of Action, and the Doe Defendants, who, as noted, are a CFS

2   supervisor and the Director of CFS, both of whom allegedly directed Mizel to cremate the

3   remains without authorization from Ramirez, likewise are entitled to summary judgment.

4   See Columbia Steel Fabricators, 44 F.3d at 803.

5   **C.  Third Cause of Action**

6       In the Third Cause of Action, titled "42 U.S.C. § 1983," plaintiffs assert federal

7   claims on behalf of D.R. and Ramirez, and allege the following:  (1) a Fourth Amendment

8   claim on behalf of D.R. and a Fourteenth Amendment claim on behalf of Ramirez, based

9   on the allegation that Does, who are alleged to be CFS employees, "seized" D.R. from

10  the hospital where she was born, "without a warrant when there were no exigent

11  circumstances" (see TAC ¶¶ 211, 213-14); (2) a Fourteenth Amendment claim on behalf

12  of Ramirez against Does, who are alleged to be Mizel's "supervising social workers" (see

13  TAC ¶¶ 125, 210), based on the allegation that said supervisors gave Mizel

14  "authorization" to cremate D.R.'s remains without obtaining Ramirez's consent (see TAC

15  ¶¶ 120, 125) and, consequently, deprived Ramirez of her rights "to have the cause of the

16  death determined, to have a say in the disposal of the body[,] and to conduct a funeral for

17  [D.R.]" (see TAC ¶ 222); and (3) a Fourteenth Amendment claim on behalf of D.R.

18  against Mizel and Does, who are alleged to be CFS employees, based on the theory that

19  said defendants "did not take any steps to locate and notice relatives of the dependency

20  process and did not provide any of the relative[s] any information and assistance for

21  placement of D.R. in their home" (see TAC ¶ 241), and, consequently, deprived D.R. of

22  her asserted right "to be place[d] in the safe home of a relative" (see TAC ¶ 242).

23      **1.  Claim Against Mizel**

24      The sole claim in the Third Cause of Action against a named County Defendant is

25  the claim that Mizel deprived D.R. of her alleged right to be placed with a relative, by not

26  providing relatives with notice of the proceedings and/or not assisting relatives who

27  sought to have D.R. placed with them.

28  //

United States District Court
Northern District of California

United States District Court
Northern District of California

### a. Subject Matter Jurisdiction

County Defendants, relying on the "Rooker-Feldman" doctrine, contend the Court lacks subject matter jurisdiction over the § 1983 claim asserted against Mizel.

The Rooker-Feldman doctrine "precludes federal court review of state court judgments other than review by the Supreme Court on certiorari."  See Doe & Associates Law Offices v. Napolitano, 252 F.3d 1026, 1029 (9th Cir. 2001); see also id. at 1027 (citing Rooker v. Fid. Trust Co., 263 U.S. 413 (1923) and D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983).)  "The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the de facto equivalent of such an appeal."  See Cooper v. Ramos, 704 F.3d 772, 777 (9th Cir. 2012). A "de facto appeal" is a civil action in which the claim is "inextricably intertwined with the state-court judgment," i.e., the claim "succeeds only to the extent that the state court wrongly decided the issues before it."  See id. at 778 (internal quotation and citation omitted).

In support of such argument, County Defendants rely on the following order of the state court, included in its "Findings and Orders" issued after the detention hearing conducted on June 28, 2018:  "No relative placement w/o hrg. before the Court first." (See County Defs.' Req. for Judicial Notice Ex. B [Doc. No. 160-3] at 5.)

To the extent the § 1983 claim against Mizel is predicated on a theory that D.R.'s asserted federal right to be placed with a relative was violated when Mizel did not unilaterally remove D.R. from Franich's custody and place D.R. with a relative, the claim is barred by the Rooker-Feldman doctrine, as any such ruling would require a finding that the state court erred in requiring that "relative placement" could only occur after a court hearing.

To the extent the § 1983 claim against Mizel is predicated on other alleged conduct, however, the claim is not barred by the Rooker-Feldman doctrine.  In particular, as plaintiffs point out, the state court's order did not prohibit placement with a relative, let alone direct Mizel not to give notice of the proceedings to relatives and not to provide

1   assistance to relatives who sought placement.  Indeed, during the above-referenced

2   proceedings, the state court, after acknowledging that "there are family members who are

3   interested in placement," stated CFS "should absolutely" process any application it

4   received from a family member.  (See Pls.' Ex. 3 [Doc. 174-6] at 8.)

5        Under such circumstances, to the extent the § 1983 claim is based on a theory

6   that D.R. was deprived of her asserted federal rights to be placed with a relative by

7   reason of Mizel's alleged failure to notify relatives of the proceedings and/or alleged

8   failure to assist family members who wished to apply for placement, such claim, if

9   successful, would not require a showing that the state court "wrongly decided" any issue

10  before it, see Cooper, 704 F.3d at 777, and, consequently, the Court has jurisdiction to

11  consider the claim to such extent.

12               **b. Qualified Immunity**

13        The Court next considers County Defendants' argument that Mizel is entitled to

14  qualified immunity.

15        "The doctrine of qualified immunity protects government officials from liability for

16  civil damages insofar as their conduct does not violate clearly established statutory or

17  constitutional rights of which a reasonable person would have known."  Demaree v.

18  Pederson, 887 F.3d 870, 878 (9th Cir. 2018) (internal quotation and citation omitted).  In

19  that regard, courts "use a two-step test to evaluate claims of qualified immunity, under

20  which summary judgment is improper if, resolving all disputes of fact and credibility in

21  favor of the party asserting the injury, (1) the facts adduced show that the officer's

22  conduct violated a constitutional [or statutory] right, and (2) that right was clearly

23  established at the time of the violation."  See id. (internal quotation and citation omitted).

24  A right is "clearly established" if "every reasonable official would have understood that

25  what he is doing violates that right," in other words, "existing precedent must have placed

26  the statutory or constitutional question beyond debate."  See Reichle v. Howards, 566

27  U.S. 658, 664 (2012).

28        County Defendants argue "there is no clearly defined law concerning mandatory

11

1    placement with relatives."  (See Defs.' Mot. for Summ. J. at 18:12-13; see also id. at 18:4-

2    9 (citing Mullins v. State of Oregon, 57 F.3d 789, 793-94 (9th Cir. 1995) (rejecting

3    argument that grandparents of dependent children have substantive constitutional right to

4    physical or legal custody).)

5        Plaintiffs, in their opposition, do not argue to the contrary.  Rather, they argue that

6    (1) D.R. was deprived of a federal statutory right to such placement, which right

7    assertedly is contained in 42 U.S.C. §§ 671(a)(19) and (a)(29), and (2) D.R. was deprived

8    of procedural due process, under the theory that various state statutes and a state court

9    rule create a federal right protected by the Due Process Clause.  The Court next

10   considers whether Mizel is entitled to qualified immunity as to those claims.

11       First, although a violation of a federal statute can, under some circumstances, give

12   rise to a claim under § 1983, see Blessing v. Freestone, 520 U.S. 329, 340-41 (1997)

13   (setting forth "factors" courts must consider in determining "whether a particular statutory

14   provision gives rise to a federal right" for purposes of § 1983), here, plaintiffs cite no

15   authority suggesting that a violation of § 671(a)(19) or § 671(a)(29) gives rise to a claim

16   under § 1983.[6]  Indeed, the one court to have considered such issue has held a plaintiff

17   may not base a § 1983 claim on a violation of either § 671(a)(19) or § 671(a)(29).  See

18   Families A Through V v. DeSantis, 658 F. Supp. 3rd 1063, 1068-71 (N.D. Fla. 2023).

19   Under such circumstances, plaintiffs have not shown "existing precedent" has "placed the

20   statutory or constitutional question beyond debate."  See Reichle, 566 U.S. at 664.

21

22   _____

23       [6] The federal statutes on which plaintiffs rely are included in the Adoption
     Assistance and Child Welfare Act, under which the federal government is authorized to
24   provide funds to states for the cost of "foster care," where the state's "plan" has been
     approved by the federal government.  See 42 U.S.C. § 670.  For a state plan to be
25   approved, the State must "consider giving preference to an adult relative over a non-
     related caregiver when determining a placement for a child, provided that the relative
26   caregiver meets all relevant State child protection standards," see 42 U.S.C.
     § 671(a)(19), and that, "within 30 days after removal of a child . . ., the State [will]
27   exercise due diligence to identify and provide notice [of the dependency proceedings] to
     [specified] relatives," including providing notice of those relatives' "options" to "participate
28   in the care and placement of the child," as well as providing a description of the
     requirements "to become a foster family home," see 42 U.S.C. § 671(a)(29).

United States District Court
Northern District of California

1    Second, although a violation of a state statute can, under some circumstances,

2    give rise to a claim under § 1983 that a plaintiff was deprived of his/her federal

3    constitutional right to procedural due process, see James v. Rowland, 606 F.3d 646, 656-

4    57 (9th Cir. 2010) (setting forth circumstances under which "[s]tate law can create a right

5    that the Due Process Clause will protect"), here, plaintiffs cite no authority suggesting that

6    a violation of any of the state statutes on which they rely, specifically, California Welfare

7    & Institutions Code §§ 309(e)(1), 361.3, and 16519.5(e),[7] or a violation of the state court

8    rule on which they rely, specifically, Rule 5.534 of the California Rules of Court,[8] creates

9    a right that the federal Due Process Clause protects.  Indeed, the only courts to have

10   considered whether any of those provisions create a right the Due Process Clause will

11   protect have found they do not.  See Kleinman v. Social Services Agency, 2020 WL

12   1031900, at *3-*4 (N.D. Cal. March 3, 2020) (holding neither § 309(e)(1) nor § 361.3

13   "create[s] a right protected by the Due Process Clause"); J.H. v. County of San Mateo,

14   2021 WL 1516371, at *2-3 (N.D. Cal. April 16, 2021) (dismissing deprivation of

15   procedural due process claim, where claim was based on social worker's alleged failure

16   to comply with § 361.3).  Under such circumstances, plaintiffs have not shown "existing

17   precedent" has "placed the statutory or constitutional question beyond debate."  See

18   Reichle, 566 U.S. at 664.

19   //

20

21         [7] The cited state statutes provide, respectively, that "the social worker shall

22   conduct, within 30 days [of removal of a child], an investigation in order to identify and
     locate [specified relatives]" and to provide them notice of the nature of the proceedings,

23   see Cal. Welf. & Inst. Code § 309(e)(1), that "preferential consideration shall be given to
     a request by a relative of the child for placement of the child with the relative," namely

24   that "the relative seeking placement shall be the first placement to be considered and
     investigated," see Cal. Welf. & Inst. Code §§ 361.3(a), 361.3(c)(1), and that, "if a

25   compelling reason exists," a county may place a child with an applicant as to whom the
     county has not yet made a "permanency assessment," see Cal. Welf. & Inst. Code

26   § 16519.5(e)(1).

27         [8] The cited rule provides that, when a "relative is located through the [requisite]
     investigation," the relative must be provided with specified information about the case.

28   See Cal. Rules of Court, Rule 5.534(b)(3).

United States District Court
Northern District of California

1    Accordingly, as to the Third Cause of Action, Mizel is entitled to summary

2  judgment on the basis of qualified immunity.

3       **2. Claims Against Doe Defendants**

4    The remaining claims in the Third Cause of Action are § 1983 claims against Doe

5  Defendants.

6           **a. Deprivation of Right to Control Remains**

7    To the extent the Third Cause of Action is asserted against Doe Defendants and is

8  based on a theory that Doe Defendants authorized Mizel to cause D.R's remains to be

9  cremated without Ramirez's consent, thus depriving Ramirez of the right to control the

10 remains, the Doe Defendants are entitled to summary judgment for the reasons stated

11 above with regard to the Second Cause of Action, namely, that it is undisputed that

12 Ramirez consented to the cremation.  See Columbia Steel Fabricators, 44 F.3d at 803.

13          **b. Deprivation of Right to Be Placed With Relatives**

14   To the extent the Third Cause of Action is asserted against Doe Defendants and is

15 based on a theory that Doe Defendants deprived D.R. of her alleged right to be placed

16 with a relative, the Doe Defendants are, for the reasons stated above with regard to said

17 § 1983 claim as asserted against Mizel, entitled to qualified immunity, and, consequently,

18 to summary judgment.  See Columbia Steel Fabricators, 44 F.3d at 803.

19          **c. Deprivation of Right to be Free From Unreasonable Seizure**

20   The remaining claim in the Third Cause of Action is that Doe Defendants, who are

21 alleged to be social workers, violated the constitutional rights of both D.R. and Ramirez

22 when they seized D.R. from the hospital without a warrant and in the alleged absence of

23 an exigency.  As County Defendants point out, said claim cannot proceed other than

24 against a named defendant.  In their opposition, plaintiffs assert they should be afforded

25 leave to name three individuals as defendants to the claim, namely, Mizel, Kathy Schulze

26 ("Schulze"), and Rosario Vidales ("Vidales"), and, in addition, to name the County as a

27 defendant to said claim.  As set forth below, the Court finds any such amendment would

28 be improper.

United States District Court
Northern District of California

1    Plaintiffs do not contend, and cite no evidence to suggest, that Mizel, Schulze, or

2   Vidales participated in the seizure.  Rather, according to a "Detention Report" submitted

3   by plaintiffs, which document was filed by CFS in state court on June 28, 2018, social

4   worker Imani Williams-Ephriam ("Williams-Ephriam"), on June 25, 2018, took D.R. from

5   the hospital without a warrant and placed D.R. in CFS custody.  (See Pls.' Ex. 1 [Doc. No.

6   174-3] at 71-74.)  Plaintiffs, however, do not seek to amend to allege the identity of the

7   "Doe" who took D.R. without a warrant, i.e., to name Williams-Ephriam as a defendant.

8   Rather, as noted, plaintiffs seek to amend to allege that others, although not participants

9   in the seizure, should be held liable.

10    With regard to Mizel, plaintiffs acknowledge she was assigned to D.R.'s case after

11   the seizure, but assert she can be held liable on the ground she was aware from the

12   Detention Report that the seizure had occurred without a warrant, and that, having such

13   knowledge, she then "failed to intervene."  (See Pls.' Opp. at 22:5-13.)[9]  With regard to

14   the County, plaintiffs, noting the Detention Report contains a line stating "Respectively

15   Submitted, Kathy Marsh ["Marsh"], CFS Director" (see Pls.' Ex. 1 at 78), contend Marsh

16   was "the final policymaker" for the County and, consequently, that her alleged "fail[ure] to

17   intervene" is attributable to the County (see Pls.' Opp. at 22:17-20).  With regard to

18   Schulze and Vidales, although plaintiffs do not expressly identify in their opposition the

19   basis for those two individuals' asserted liability for the seizure, it would appear plaintiffs

20   are relying on the fact that Schulze and Vidales were, respectively, Williams-Ephriam's

21   supervisor (see Pls.' Ex. 1 at 78) and Mizel's supervisor (see Pls.' Ex. 1 at 79), and are

22   arguing that they, like Mizel and Marsh, also failed to intervene.

23    In support of their argument that the proposed new defendants to the seizure claim

24   can be held liable under a failure-to-intervene theory, plaintiffs cite Cunningham v. Gates,

25   229 F.3d 1271 (9th Cir. 2000), where, in the context of analyzing a claim involving police

26

27      [9] Plaintiffs have not submitted a proposed Fourth Amended Complaint and,
    consequently, the Court looks to the opposition to determine the basis of the proposed
28   amendment.

shootings, the Ninth Circuit reiterated a holding in a prior case that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." See id. at 1289 (internal citation and quotation omitted).  The Ninth Circuit, in Cunningham, however, also clarified that "officers can be held liable for failing to intercede only if they had an opportunity to intercede," see id., and, consequently, held that "officers who were not present at the time of the shootings," as well as "officers who were present at the shootouts" but "had no realistic opportunity to intercede," could not be held for failing to intervene, see id. at 1290.

Here, as plaintiffs do not assert that Mizel, Marsh, Schulze, or Vidales was present at the seizure or was involved in the decision to detain D.R. without a warrant before or at the time it was made, none of those individuals or the County can be held liable for failure to intervene.  See id.  Under such circumstances, the proposed amendment is futile, and, consequently, leave to amend is not warranted.  See Dougherty v. City of Covina, 654 F.3d 892, 901 (9th Cir. 2011) (affirming dismissal of claims without leave to amend, where "amendment would be futile").

Moreover, the proposed amendment is untimely.  As County Defendants point out, the deadline to amend the pleadings was July 1, 2022.  (See Pretrial Preparation Order, filed April 29, 2020 [Doc. No. 109].)  Although a party may seek to amend after the deadline to do so has passed, such party must show "good cause" for an extension.  See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (citing Fed. R. Civ. P. 16(b)).  In determining whether "good cause" exists, "the focus of the inquiry is upon the moving party's reasons for seeking modification," and, "[i]f that party was not diligent, the inquiry should end."  See id.  Here, plaintiffs received the Detention Report, upon which the proposed new claims are based, on April 13, 2020 (see Mauck Decl. ¶ 8, Ex. F [Doc. 160-21]), and plaintiffs fail to explain why they did not seek to amend between that date and the July 1, 2022, deadline.

Accordingly, there being no named defendant to the seizure claim, and plaintiffs having failed to show good cause to amend to name a defendant, the claim is subject to

1  dismissal without further leave to amend.[10]

2                                    **CONCLUSION**

3          For the reasons stated above, County Defendants' motion for summary judgment

4  is hereby GRANTED as to all claims, with the exception that, to the extent the Third

5  Cause of Action is based on a claim that D.R.'s seizure was unconstitutional, the Third

6  Cause of Action is hereby DISMISSED without further leave to amend.

7          **IT IS SO ORDERED.**

8

9  Dated: April 18, 2024

10                                                            MAXINE M. CHESNEY
                                                             United States District Judge

---

[10] Although County Defendants contend plaintiffs are unable to show the seizure violated the Fourth or Fourteenth Amendment, thereby requiring summary judgment rather than dismissal, the Court has not considered said argument herein, as neither of the two County Defendants is named as a defendant to said claim, and, consequently, neither has standing to seek a ruling on its viability.  See, e.g., In re Grand Jury Subpoenas Dated December 10, 1987, 926 F.2d 847, 852 (9th Cir. 1991) (finding movant "lack[ed] standing to challenge" subpoena served on another individual).