IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. R., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>CONTRA COSTA COUNTY CA, et al.,<br><br>        Defendants. | Case No. 19-cv-07152-MMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF** |

Before the Court is the Motion, filed May 16, 2024, on behalf of plaintiffs D.R.,[1] John Freeman ("Freeman"), and Cristina Ramirez ("Ramirez"), "for Relief from Order Granting Summary Judgment and Order Granting Motion for Dismissal of the Third Amended Complaint."  Defendants Contra Costa County ("County") and Tasha Mizel ("Mizel") (collectively, "County Defendants") have filed opposition, to which plaintiffs have replied.  Having read and considered the parties' respective written submissions, the Court rules as follows.[2]

## BACKGROUND

In the instant action, plaintiffs assert claims arising out of the detention of D.R. by the County's Children & Family Services ("CFS"), the subsequent dependency proceedings in state court including the placement of the child in foster care, the child's death while in the custody of a foster parent, and actions taken by CFS employees after

---

[1] D.R. is a deceased minor who appears through her successor-in-interest John Freeman.

[2] By order filed August 12, 2024, the Court took the matter under submission.

the death.

By order filed March 4, 2022, the Court granted in part and denied in part County Defendants' motion to dismiss the operative complaint, namely, the Third Amended Complaint ("TAC"); in so doing, the Court dismissed all claims brought on behalf of Freeman and dismissed some of the claims brought on behalf of D.R. and on behalf of Ramirez. By order filed April 18, 2024, the Court ruled on County Defendants' motion for summary judgment, finding, with one exception, County Defendants were entitled to summary judgment as to all remaining claims, the exception being one claim that was dismissed without further leave to amend, rather than summarily adjudicated.

On April 18, 2024, the Clerk of Clerk entered judgment.

## DISCUSSION

Under Rule 60(b), a court may "relieve a party" from "a final judgment, order, or proceeding" for six specified reasons, including two reasons on which plaintiffs rely, namely, "mistake, inadvertence, surprise, or excusable neglect," see Fed. R. Civ. P. 60(b)(1), and "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," see Fed. R. Civ. P. 60(b)(3).

Plaintiffs seek relief from four rulings made in the order resolving County Defendants' motion to dismiss the TAC, as well as from one ruling made in the order resolving County Defendants' motion for summary judgment. The Court considers these arguments, in turn.

**A. Dismissal of Plaintiffs' Municipal Liability Claim: Seizure of D.R.**

In the TAC, plaintiffs asserted, as Count 2 in the Fourth Cause of Action, municipal liability claims against the County, pursuant to 42 U.S.C. § 1983. One of the claims included within Count 2 was that "Does," identified as CFS "social workers," unlawfully seized D.R. from the hospital in which she was born, in that they did not have a warrant and no exigent circumstances existed (see TAC ¶¶ 213, 258), and that such seizure occurred pursuant to "the County's customs and practices" (see TAC ¶¶ 259-260).

//

In dismissing the claim, the Court ruled as follows:

> In dismissing the Fourth Cause of Action, as alleged in the FAC, the Court found plaintiffs failed to provide sufficient notice of the basis for the claim, as plaintiffs did no more than identify the factual allegations on which their Third Cause of Action was based and then alleged, as a conclusion, the existence of a municipal policy to engage in such activity.
>
> With regard to the seizure, plaintiffs have not added in the TAC any allegations sufficient to plead a municipal policy or practice under which DCFS employees were acting when they seized D.R. without a warrant. Rather, as in the FAC, plaintiffs again identify the factual allegations describing that seizure, and then allege as a conclusion that a municipal policy to engage in such activity exists.  (Compare FAC ¶¶ 204.b, 204.c, 204.g. with TAC ¶¶ 259.a, 259.b, 259.f.)

(See Order, filed March 4, 2022, at 20:21-21:3.)

Plaintiffs do not expressly identify any basis for relief from said ruling, and, indeed, do not assert the TAC did include non-conclusory allegations as to the existence of a municipal policy, allegations that are required.  See AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (holding, at pleading state, plaintiff asserting municipal liability claim must allege "plausible facts" to identify "policy or custom"). Rather, plaintiffs note they had attached to their opposition to the motion to dismiss a "policy document" that, according to plaintiffs, constitutes "proof" that the County "did not have a valid warrant policy" (see Pls.' Mot. for Relief at 15:20-25), thus, apparently, contending the submission of said document with their opposition required the Court to find the municipal liability claim was sufficiently pleaded.  Under such circumstances, the Court understands plaintiffs to be arguing that the Court, in dismissing the above-described municipal liability claim, engaged in a legal error.  See Kemp v. United States, 596 U.S. 528, 530 (2022) (interpreting "mistake," as used in Rule 60(b)(1), to include "a judge's errors of law").

Plaintiffs, however, have failed to show any error.  The referenced exhibit, a 10-page document that appears to be part of a CFS "Handbook" (see Doc. No. 82-1), was not attached to the TAC, nor did plaintiffs seek leave to amend to attach it to a proposed Fourth Amended Complaint or to allege its contents in such proposed pleading.  More importantly, any such leave, had it been requested, would have been denied as futile, as

3

1  plaintiffs do not identify any unconstitutional custom or practice included therein; rather,
2  the document sets forth the protections provided to parents under the Fourth
3  Amendment, as well as under case authority and statutes, and, in particular, explains in
4  detail that a social worker cannot seize a child in the absence of a court order, exigent
5  circumstances, or consent.  (See id.)

6  Additionally, in seeking relief from the dismissal of the above-described municipal liability claim, plaintiffs refer to evidence they obtained during the course of discovery, all of which discovery appears to have been obtained after the dismissal and while other claims remained pending.  Although plaintiffs argue such evidence would support the municipal liability claim that was dismissed, plaintiffs fail to identify any cognizable basis for reconsideration of the dismissal in light of their having obtained such evidence.  In particular, plaintiffs never sought reconsideration in light of such discovery, and do not assert such failure was the result of excusable neglect on the part of their counsel or anyone else.  Nor do plaintiffs suggest defendants engaged in some type of fraud or misrepresentation that precluded plaintiffs from seeking leave to amend.[3]

Accordingly, to the extent plaintiffs seek relief from the ruling dismissing the above-referenced municipal liability claim contained in Count 2 of the Fourth Cause of Action, the motion will be denied.

**B.  Dismissal of D.R.'s § 1983 Claim Against Mizel/Does: Failure to Protect**

In the TAC, plaintiffs asserted, as Count 3 in the Third Cause of Action, a survival action under 42 U.S.C. § 1983 brought on behalf of D.R. and against Mizel, a social worker employed by CFS, as well as against Does employed by CFS, based on a "failure to protect" theory.  (See TAC at 33:2-4 and ¶ 226.)  In particular, plaintiffs alleged that

---

[3] In seeking relief from the order dismissing the above-discussed claim, as well as the dismissal of other claims discussed below, plaintiffs do not argue that the evidence on which they rely meets the standard set forth in Rule 60(b)(2), i.e., that the evidence constitutes "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  See Fed. R. Civ. P. 60(b)(2).

4

Mizel and the Does failed to "inspect the foster home and the sleeping arrangements for D.R." (see TAC ¶ 230), and that Mizel "knew" of "obvious dangers" in the foster home, such as the "swaddl[ing]" of D.R. by the foster mother, Marcie Franich ("Franich"), who allegedy was aware D.R. was able to "roll over on her stomach," and the use of a "DockATot" (see TAC ¶¶ 148, 232-235).

In dismissing the claim, as pleaded in the TAC, the Court ruled as follows:

> Children found to be dependents of a court hold "protected liberty interests in being shielded from harm inflicted by a foster parent," see Tamas v. Department of Social & Health Services, 630 F.3d 833, 842 (9th Cir. 2010), and are deprived of said liberty interests if social workers "act with such deliberate indifference [thereto] that their actions shock the conscience," see id. at 844 (internal quotation and citation omitted). For a state actor to "act with deliberate indifference, he must recognize the unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff"; stated otherwise, he "needs to know that something is going to happen but ignore the risk and expose the plaintiff to it." See Herrera v. Los Angeles Unified Sch. Dist., 18 F.4th 1156, 1158-59 (9th Cir. 2021) (internal quotations, alterations, and citation omitted).

(See Order, filed March 4, 2022, at 16:25-17:7.) The Court continued, as follows:

> In its September 15 Order, the Court, in dismissing the claim as alleged in the FAC, found as follows:
>
>> Here, as County Defendants correctly observe, the FAC includes insufficient facts to support a finding that Mizel, or any other County employee, acted with deliberate indifference to D.R.'s safety, either at the time D.R. was placed with Franich or during the approximately three months in which she was in Franich's care. Rather, the facts alleged support, at best, a finding of negligence. (See, e.g., FAC ¶ 88 (alleging unnamed DCFS employees "failed to ensure" Franich had "sufficient knowledge and skills to take care of an infant, such as knowledge of safe sleeping practice[s] and how to administer CPR to an infant"); FAC ¶ 90 (alleging Mizel "failed to supervise and monitor [ ] Franich").) Negligence, even if "gross," is, however, insufficient to support a deliberate indifference claim. See L.W. v. Grubbs, 92 F.3d 894, 899 (9th Cir. 1996) (holding, where plaintiff alleged defendant was deliberately indifferent to her safety needs, "tortious conduct, when proved, may well result in some state law remedy, but gross negligence, in and of itself, is not unconstitutional").

(See id. at 17:8-18 (quoting Order, filed September 15, 2020, at 15:6-18).) The Court concluded, as follows:

> In the TAC, plaintiffs have added allegations that Mizel knew "the DockATot, because of its construction, is fatally dangerous if D.R. was swaddled and put in it unsupervised because if D.R. turned over she could [be] suffocated" (see TAC ¶ 170; see also TAC ¶ 225), and that Mizel "knew

one month before the death that the infant D.R. had managed to roll over on her stomach on her own and that she was often swaddled tightly" (see TAC ¶ 232.)  Although these additional factual allegations, like those in the FAC, may support a finding of negligence, they are insufficient to support a finding that Mizel or any Doe defendant "actually intended," by placing D.R. with Franich and/or by not removing D.R. from Franich's care, to expose D.R. to the risk of asphyxiation.  See Herrera, 18 F.4th at 116-61.

(See id. at 17:19-28.)

In seeking relief from the above-quoted ruling, plaintiffs identify evidence they state they obtained that, in their view, would show Mizel and/or Does deprived D.R. of her liberty interest in being shielded from harm inflicted by a foster parent.  As is the case with the above-discussed claim, however, plaintiffs fail to identify any cognizable basis for reconsideration of the dismissal predicated on their having obtained such evidence, particularly given that plaintiffs never sought relief in light of any such evidence.

Accordingly, to the extent plaintiffs seek relief from the ruling dismissing Count 3 in the Third Cause of Action, the motion will be denied.

**C. Dismissal of D.R.'s Municipal Liability Claim:  Failure to Protect**

In the TAC, plaintiffs asserted, as Count 3 in the Fourth Cause of Action, a survival action under 42 U.S.C. § 1983, brought on behalf of D.R. and against the County, based on the theory that the alleged failure by Mizel and the Does to protect D.R. from the foster parent occurred as a result of "the County's customs and practices."  (See TAC ¶¶ 264, 269.)

In dismissing the claim, the Court found that, because the failure to protect claim against Mizel and the Does was "insufficiently pleaded . . ., a [municipal liability] claim against the County necessarily fails."  (See Order, filed March 4, 2022, at 20:12-16 (citing Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (holding "[b]ecause there is no constitutional violation, there can be no municipal liability").)

In seeking relief from the above-quoted ruling, plaintiffs cite to a County report and to deposition testimony provided by Franich that, in plaintiffs' view, would support a finding that any failure to protect on the part of Mizel and/or the Does was the result of a municipal policy.  As is the case with the above-discussed two claims, however, plaintiffs

6

1  fail to identify any cognizable basis for reconsideration of the dismissal in light of their
2  having obtained, apparently after the dismissal, evidence that might support the claim,
3  particularly given that plaintiffs never sought relief in light of any such evidence.
4      Accordingly, to the extent plaintiffs seek relief from the ruling dismissing Count 3 in
5  the Fourth Cause of Action, the motion will be denied.

**D.  Dismissal of Freeman's 42 U.S.C. § 1983 Claim:  Handling of Remains**

    In the TAC, plaintiffs asserted, as Count 2 in the Third Cause of Action, a claim that Does deprived plaintiffs of their constitutional rights, in violation of 42 U.S.C. § 1983. One of the claims included within Count 2 asserted that Freeman was deprived of his "rights under [the] 14th Amendment to have the cause of the death determined, to have a say in the disposal of the body and to conduct a funeral for [D.R.]" (see TAC ¶ 222), which deprivation allegedly occurred when Mizel, acting under an "order" of "her supervisor" and/or the CFS "director," called Freeman "a few days after the death, while he was in distress and mourning, [and] fraudulently induced consent to cremate the body" (see TAC ¶¶ 119, 186, 210).[4]

    In dismissing the claim, the Court ruled as follows:

> A parent has a liberty interest in "the companionship, care, custody, and management of their children."  See Brittain v. Hansen, 415 F.3d 982, 992 (9th Cir. 2006).  As the Ninth Circuit has explained, however, such liberty interest is held only by a parent who has "legal custody" of a child or, at a minimum, "visitation rights."  See id.  Here, Freeman does not allege he had custody of D.R. or visitation rights . . . at any time, and, consequently, has failed to allege facts to show he had a liberty interest.

(See Order, filed March 4, 2022, at 14:18-28; see also id. at 16:9-10.)

    Plaintiffs do not expressly identify any basis for relief from said ruling, other than to "request that the Court reverse its ruling on Freeman's standing to prevent a bad precedent against fathers." (See Pls.' Mot. for Relief at 15:17-18.)  To the extent such assertion is meant to suggest that the Court, in dismissing the above-described claim,

---

[4] As noted, the claim is brought against Does, who the Court understands to be Mizel's supervisor and the Director of CFS.

7

1  engaged in a legal error, no such showing has been made.

2  In particular, although the Ninth Circuit has held a parent's liberty interest in the "companionship, care, custody, and control" of his/her child "reasonably extends to decisions dealing with death, such as . . . how to dispose of the remains," see Marsh v. County of San Diego, 680 F.3d 1148, 1154 (9th Cir. 2012) (internal quotation and citation omitted), such liberty interest, as was discussed in the order dismissing the claim, has not been recognized where a parent does not have custody or visitation rights.  To the extent plaintiffs contend Freeman had a right under state law to decide how to dispose of the remains, and that he therefore obtained a federally-recognized liberty interest, such argument is unsupported by any authority, let alone by "clearly established" law necessary to support a § 1983 claim.  See Siegert v. Gilley, 500 U.S. 226, 231 (1991) holding plaintiff fails to state federal civil rights deprivation claim in the absence of alleging "violation of a clearly established constitutional right"); see also Reichle v. Howards, 566 U.S. 658, 664 (2012) (holding federal constitutional right is "clearly established" where "existing precedent" places "constitutional question beyond debate") (internal quotation and citation omitted).

Accordingly, to the extent plaintiffs seek relief from the ruling that Count 2 in the Third Cause of Action, as asserted on behalf of Freeman and based on a theory he was deprived of a liberty interest to control D.R.'s remains, the motion will be denied.

**E.  Summary Judgment of Ramirez's Claims:  Handling of Remains**

The TAC includes two claims based on the allegation that "Mizel did not receive consent from [Ramirez,] D.R.'s mother[,] to have the body cremated."  (See TAC ¶ 120). Specifically, plaintiffs assert (1) the Second Cause of Action, a state law claim against Mizel and Does, titled "Negligence and Negligence Per Se – Usurpation of Infant's Remains; Negligent Infliction of Emotional Distress" (see TAC at 24:5-8) and (2) a claim within Count 2 in the Third Cause of Action, which as set forth in more detail in the previous section, was brought under § 1983 and included a claim against Does, based on the alleged deprivation of the Fourteenth Amendment right "to have the cause of the

death determined, to have a say in the disposal of the body and to conduct a funeral for [D.R.]" (see TAC ¶ 222). To the extent those two claims were asserted on behalf of Ramirez, neither was dismissed at the pleading stage; rather, each was resolved against Ramirez when the Court granted County Defendants' motion for summary judgment.

In its order granting County Defendants' motion for summary judgment, the Court found no triable issue of fact existed and that Mizel and the Does were entitled to summary judgment, as follows:

> In particular, County Defendants have submitted evidence, undisputed by plaintiffs, that Mizel, prior to arranging for the cremation, "contacted plaintiff Ramirez and spoke with her personally" and that "she agreed to cremation." (See Mizel Decl. ¶ 20.) In response, plaintiffs argue a triable issue of fact as to consent nonetheless exists, relying on a declaration from Michelle Rezentes ("Rezentes"), Ramirez's mother, who states therein: "If I had known about the circumstances of the death, Cristina [Ramirez] and I would not have given any consent." (See Rezentes Decl. ¶ 16.) As County Defendants point out, however, Rezentes' speculation as to what Ramirez may have done had her mother been aware of those circumstances is inadmissible, and plaintiffs offer no declaration from Ramirez herself.
>
> Accordingly, . . . there being no dispute that Ramirez provided consent to the cremation, County Defendants are entitled to summary judgment on the Second Cause of Action, and the Doe Defendants, who, as noted, are a CFS supervisor and the Director of CFS, both of whom allegedly directed Mizel to cremate the remains without authorization from Ramirez, likewise are entitled to summary judgment. See Columbia Steel Fabricators, 44 F.3d at 803.

(See Order, filed April 18, 2024, at 8:16-9:4.)

Plaintiffs seek relief from the above-referenced finding, relying on a declaration from Ramirez, in which she states in relevant part:

> I have never given Tasha Mizel consent to cremate the body of my daughter D.R.
>
> Besides a phone call informing me that my daughter had passed away, I have never received a phone call from social worker Mizel, and I have never talked to her about the cremation.

(See Ramirez Decl. [Doc. No. 185-3] ¶¶ 2-3.)

Plaintiffs argue the above-quoted declaration, although not filed with their opposition to the motion for summary judgment, should be considered at this time, due to excusable neglect.

9

1  "Neglect," as used in Rule 60(b)(1), means "negligence, carelessness [or] inadvertent mistake." See Briones v. Riviera Hotel & Casino, 116 F.3d 379, 381 (9th Cir. 1997). The determination of whether a party's neglect is "excusable" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." See Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 395 (1993). Specifically, in making such equitable determination, a district court must consider "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." See id.

Here, in support of their argument that the failure to timely submit Ramirez's declaration is excusable, plaintiffs rely on declarations of Ramirez and her counsel, Quoc Pham ("Pham"). In her declaration, Ramirez states that she "communicated" with Pham through "phone, email and Facebook messenger," that her phone was "confiscated" by the "Manteca Police Department" during a "traffic stop," and that she "could not check" her "voicemails, email and Facebook accounts for message" without the phone. (See Ramirez Decl. [Doc. 185-3] ¶¶ 7-8). In his declaration, Pham states that he "tried numerous times to reach . . . Ramirez through her phone and Facebook Messenger to get a signed declaration from her," that he "finally got through to Ramirez on April 18, 2024, at 4:04 PM," and that he "was able to get two declarations from her on April 20, 2024." (See Pham Decl. ¶¶ 2-3.)

The Court's ability in this instance to weigh the relevant factors is, as County Defendants observe, hampered, not only by plaintiffs' failure to identify any of the relevant factors, let alone make an argument to why the relevant factors weigh in favor of finding the neglect was excusable, but, equally if not more importantly, the lack of detail in the declarations on which plaintiffs rely. In particular, the Court's ability is determine the length of the delay occasioned by the circumstances identified in the declarations, the reason or reasons for the delay, and whether Ramirez and her counsel have acted in

10

1  good faith is hampered by the lack of any detail as to the dates on which the various acts
2  occurred, such as the date on which Ramirez's phone was confiscated, the date Pham
3  began to contact her, and the date Ramirez was finally able to contact Pham,[5] as well as
4  why the event or events that caused Pham to be able to contact her, could not have
5  occurred earlier.
6  　　　In any event, assuming the Court were to consider Ramirez's declaration at this
7  time and find a triable issue of fact exists as to whether she gave her consent to
8  cremation, plaintiffs, for the reasons discussed below, have failed to show they are
9  entitled to relief from the judgment as to the lack-of-consent claims.

**1. State Law Claim**

　　　With respect to the Second Cause of Action, a state law claim based on Ramirez's asserted failure to consent to cremation, County Defendants sought summary judgment on the alternative ground that Ramirez's claim was barred by her failure to submit a timely claim form, as is required by the Tort Claims Act.  As was explained in the Court's order granting summary judgment, Ramirez did not dispute that her claim would be barred if the claim presentation requirement applied, but, instead, argued the claim presentation requirement was inapplicable, under the theory that Mizel acted outside the scope of her employment when she allegedly caused the remains to be cremated without Ramirez's consent.  (See Order, filed April 18, 2024, at 3:23-5:6, 7:17-26.)  Although the Court did not reach that issue in light of its finding there was no evidence that Mizel caused the remains to be cremated without Ramirez's consent, the Court, having now considered the issue, finds, as set forth below, Ramirez's state law claim is barred.

　　　Plaintiffs argued in opposition to the motion for summary judgment, and argue in the instant motion, that Mizel's alleged acts were outside the scope of her employment as

---

[5] The failure to provide the relevant dates, or even a time frame, stands in sharp contrast to Pham's providing the precise date and time in which he was able to reach Ramirez, thus indicating plaintiffs are aware of the importance of providing details as to timing.

11

1  a social worker, for the asserted reason that CFS no longer had custody of D.R. after her
2  death.  If the trier of fact were to find Ramirez did not give consent, such finding, in turn,
3  could support a finding that Mizel violated state law.  See Cal. Health & Safety Code
4  § 7100(a) (providing "right to control the disposition of the remains of a deceased person"
5  belongs to "surviving competent parent or parents," where deceased did not have "agent
6  under a power of attorney for health case," a surviving spouse, or a surviving child or
7  children).  Merely showing a municipal employee has violated state law, however, does
8  not mean the employee was acting outside the scope of his/her employment.  Rather, as
9  explained by the California Supreme Court, an employee acts within the "scope of
10 employment," even when "negligen[t]" or engaging in "willful or malicious torts," where
11 "the employee's conduct is not so unusual or startling that it would seem unfair to include
12 the loss resulting from it among the costs of the employer's business," see Farmers Ins.
13 Group v. County of Santa Clara, 11 Cal. 4th 992, 1003-1004 (1995) (observing "scope of
14 employment" is "interpreted broadly").  Such tortious acts are considered within the scope
15 of employment where the employee's assertedly "tortious actions are engendered by
16 events or conditions relating to the employment," see id. at 1006, and not where "the
17 employer inflicts an injury out of personal malice, not engendered by the employment" or
18 "the misconduct is not an outgrowth of the employment," see id. at 1005 (internal
19 quotations and citations omitted).

20      Here, plaintiffs have failed to show the asserted misconduct by Mizel was not
21 "engendered by events or conditions relating to [her] employment" or an "outgrowth" of
22 her employment."  See id. at 1005-1006.  In particular, plaintiffs fail to offer evidence to
23 support a finding that Mizel's acts, assuming they occurred in the manner set forth in
24 Ramirez's declaration, arose out of "personal malice, not engendered by the
25 employment," or as a result of "personal compulsion," see id. at 1005-1006 (summarizing
26 facts in cases where employee acted outside scope of employment), as opposed to being
27 an outgrowth of Mizel's responsibilities as the social worker assigned to D.R.'s case.
28      Accordingly, even assuming Ramirez's newly-filed declaration is considered, Mizel

12

1  remains entitled to summary judgment on the Second Cause of Action, given Ramirez's
2  failure to submit a timely claim to the County, and the Doe Defendants likewise remain
3  entitled to summary judgment on the same grounds.  See Columbia Steel Fabricators,
4  Inc. v. Ahlstrom Recovery, 44 F.3d 800, 803 (9th Cir. 1995) (affirming grant of summary
5  judgment in favor of nonappearing defendant where plaintiff, in response to summary
6  judgment motion filed by appearing defendant, had "full and fair opportunity to brief and
7  present evidence" on dispositive issue applicable to both nonappearing and appearing
8  defendants).

**2. Federal Claim**

With respect to the federal claim based on Mizel's allegedly causing the remains to be cremated without Ramirez's consent, which, as set forth above, is contained in Count 2 in the Third Cause of Action, the sole defendants are "Does," who, as also set forth above, are Mizel's supervisor and the Director of CFS.

In seeking summary judgment, County Defendants alternatively argued that all claims asserted against Does should be dismissed, as the deadline to amend the pleadings, which was July 1, 2022 (see Pretrial Preparation Order, filed April 29, 2020 [Doc. No. 109]), had long passed, and that plaintiffs could not show good cause to extend said deadline to name the Does.  Because the Court found there was no evidence demonstrating Mizel, or anyone else, caused the remains to be cremated without Ramirez's consent, the Court did not reach at that time County Defendants' alternative argument.  Having now considered the issue, the Court finds Ramirez's federal claim is subject to dismissal for the alternative reason argued by County Defendants.

Although a party may seek to amend after the deadline to do so has passed, such party must show "good cause" for an extension.  See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (citing Fed. R. Civ. P. 16(b)).  In determining whether "good cause" exists, "the focus of the inquiry is upon the moving party's reasons for seeking modification" and, "[i]f that party was not diligent, the inquiry should end." See id.  Here, plaintiffs obtained documents from the state court in April 2020 (see

13

Authentication of Exhibits [Doc. No. 173-3] Ex. 1 at 2-3),[6] which documents provided the name of Mizel's supervisor as well as the name of the Director of CFS (see id. Ex. 1 at 79 ("Juvenile Dependency Petition," identifying Mizel's supervisor as Rosario Vidales and identifying Director of CFS as Kathy Marsh)).  Plaintiffs fail to explain why they did not seek to amend between that date and the July 1, 2022, deadline, or why, if for some reason good cause may have existed not to name those Does by the July 1, 2022, deadline, why plaintiffs failed to so move at any time thereafter, including in connection with the instant motion.

Accordingly, assuming Ramirez's newly-filed declaration is considered, the claim is subject to dismissal without further leave to amend, there being no named defendant to the claim, and plaintiffs having failed to show good cause to amend to name a defendant at this stage of the proceedings.

## CONCLUSION

For all of the reasons set forth above, plaintiffs' motion for relief from the order dismissing in part the Third Amended Complaint and the order granting summary judgment is hereby DENIED.

**IT IS SO ORDERED.**

Dated: August 30, 2024

MAXINE M. CHESNEY
United States District Judge

---

[6] In citing to said exhibit, the Court has used herein the page number affixed to the top of each page by this district's electronic filing program.